40 N.J. Super. 276 (1956)
123 A.2d 46
ARTHUR HOCHBERG, HANNA HOCHBERG, CARL J. STEINMETZ, ANNA STEINMETZ, LEE ISAACSON, HAROLD HIRSH, RUTH HIRSH, WILLIAM WAGNER, HENRIETTA WAGNER, JULIUS SCHOENBERG, MARY SCHOENBERG, ANNA S. COLE, FRANK A. WITBECK, ALICE M. WITBECK, DAVID BERDAN, DORIS BERDAN AND EMILIE R. BUCK, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF FREEHOLD, A MUNICIPAL CORPORATION, FREEHOLD RACING ASSOCIATION, A BODY CORPORATE, ABRAHAM ZLOTKIN AND WALTER J. SCHIVEREA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1956.
Decided May 17, 1956.
*279 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Robert V. Carton argued the cause for plaintiffs-appellants (Messrs Durand, Ivins & Carton, attorneys).
Mr. William R. Blair, Jr., argued the cause for defendant-respondent Abraham Zlotkin (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys; Mr. Theodore D. Parsons, of counsel).
Mr. John J. Clancy argued the cause for remaining defendants-respondents (Messrs. Clancy & Hayden, attorneys)
*280 The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiffs, property owners in the Borough of Freehold, brought this action in lieu of prerogative writ to set aside an amendment to the zoning ordinance of the borough. The Superior Court, Law Division, held the amendment valid. Plaintiffs appeal.
The area rezoned by the amendment, some 26 acres, lies on the outskirts of the borough, adjoining the Township of Freehold. It is roughly triangular in shape, pointed toward the north. One leg of the triangle is State Highway Route No. 33 (which runs from Trenton to Asbury Park); the other leg is partly the borough-township line and partly State Highway Route No. 4 (which according to the record extends from George Washington Bridge to Atlantic City); and the base of the triangle apparently runs along the rear line of properties located on the north side of West Main Street in the borough. The area is owned by the defendant Freehold Racing Association, except for about an acre at the apex of the triangle, which is owned by the defendant Zlotkin.
This triangle may be said to be a segment of a larger integrated triangle, uncrossed by any street, covering 60 acres, 34 acres of which lie in Freehold Township. From one map it appears that the township line seems to cut through a small part of the oval race track itself. The base of this larger triangle is the base of the smaller triangle. The two state highways mentioned form the legs of the larger triangle, and just at the apex is a traffic circle where these and another road or roads converge. Zlotkin owns several acres at this apex, located chiefly in the township, which are contiguous to the land of the Racing Association. His property is largely unimproved, having been used for 35 years in his cattle and hog business and recently (at least in part) for parking autos of those attending the track.
Under the borough's original zoning ordinance adopted in 1924, the rezoned area was placed in a Class A residential district. It remained in this district until the amendment of 1954, challenged here, placed it in a business zone. However, *281 the oval race track is itself set forth on the 1924 zone map, being then admittedly a nonconforming use in the residential zone. In fact, harness racing has been conducted at this track, it is said, since 1853. It is stipulated that since 1941 the Racing Association has been operating the only harness racing track in New Jersey licensed to conduct pari-mutuel betting. The license permitted betting for a period of 24 racing days a year from 1944 to 1952, and for a period of 50 days a year since then.
In January 1953 the Racing Association requested the mayor and borough council to rezone the area owned by it, so as to constitute it a business zone; a public hearing was held, but the planning board turned down the proposal. Thereafter in April 1953, on application of the Racing Association and after another public hearing, the board of adjustment granted variances to construct an addition to the bleachers, an addition to the grandstand providing club house facilities, a temporary paddock, an enlargement of the office building and of the parking stations. The Superior Court, Law Division, however set the variances aside. An appeal in that cause was brought on for argument before us along with the present appeal, and an opinion therein is filed herewith. 40 N.J. Super. 271.
A few days after the court's oral ruling on the variances, the borough council was again requested by the Racing Association to amend the ordinance (the trial judge apparently suggested this course during the trial of the variance case). Subsequently the amendment now before us was recommended apparently unanimously by the board of adjustment (though its recommendation is not called for by the law), approved by the planning board on May 10, 1954 by a vote of 5 to 2, adopted by the borough council on May 17, 1954 by a vote of 4 to 2, approved by the mayor and then sustained by the Law Division judge who had struck down the variance. Although of little moment in our view of the case, nevertheless it may be mentioned that petitions favoring the proposed change in zone were signed by 2,098 residents of the borough, over a third of the adults in the *282 community, one of the petitions bearing the signatures of 100 businessmen. Petitions opposing the change were signed by 213 residents.
Our decision here turns on a narrow point. N.J.S.A. 40:55-35, dealing with amendments to a zoning ordinance, provides:
"* * * no amendment or change shall become effective unless the ordinance proposing such amendment or change shall first have been submitted to the planning board, when such board exists, for approval, disapproval or suggestions, and the planning board shall have a reasonable time, not less than thirty days, for consideration and report, and in the case of an unfavorable report by the planning board such amendment shall not become effective except by a favorable vote of two-thirds of the governing body."
Under the terms of this statute, amendments must be submitted to the planning board (at least where there is such a board). Hasbrouck Heights Hosp. Ass'n v. Borough of Hasbrouck Heights, 15 N.J. 447 (1954). But 
"* * * No member of the planning board shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest." N.J.S.A. 40:55-1.4.
Three members of the planning board are charged with a disqualifying personal or financial interest here, and the question is whether this last statute has been violated. In 1953 and 1954 (the board acted on this matter in May 1954) one member was partly responsible for one of the track concessions, namely, the running of the horsemen's kitchen. Asked whether he made any money out of it, he testified
"I wouldn't say so, no, not for the time and effort I put into it."
Beyond question, the implication of this testimony is that he made a little money out of the concession. He therefore may be said to have had a financial interest, to some small extent, in the improvements contemplated by the zoning amendment. Those improvements apparently included 40 *283 more stalls for horses with (one might infer) a resulting increase in the number of horsemen.
In construing one city charter which provided that no member of the city council shall be interested in a contract payable from the city treasury, it was held that a financial interest serves to disqualify a member of the council, however small that interest may be. Foster v. City of Cape May, 60 N.J.L. 78 (Sup. Ct. 1897), opinion of Justice Depue, Justices Magie and Gummere concurring. Under various statutes of like import, it has been held that service in municipal affairs calls for an exclusive fidelity, and a corroding self-interest vitiates the municipal action. Ames v. Board of Education of Montclair, 97 N.J. Eq. 60, 65 (Ch. 1925); Rankin v. Board of Education of Egg Harbor, 135 N.J.L. 299, 303, 304 (E. & A. 1947); Pyatt v. Mayor & Council of Borough of Dunellen, 9 N.J. 548, 555 (1952); see Traction Co. v. Board of Public Works, 56 N.J.L. 431 (Sup. Ct. 1894), affirmed 57 N.J.L. 710 (E. & A. 1895); cf. Cobble Close Farm v. Board of Adjustment of Middletown, 10 N.J. 442, 454 (1952); Mackler v. Board of Education of Camden, 16 N.J. 362, 368 (1954); but cf. Wakefield v. Mayor & Council of Borough of Caldwell, 9 N.J. Misc. 44 (Sup. Ct. 1930); Gland v. Mayor & Council of Borough of North Arlington, 13 N.J. Misc. 521 (Sup. Ct. 1935); Downs v. Mayor & Common Council of City of South Amboy, 116 N.J.L. 511 (E. & A. 1936). See in general Annotations, 133 A.L.R. 1257, 140 A.L.R. 344. The self-interest of one member of the planning board infects the action of the other members of the board, regardless of their disinterestedness. Pyatt v. Mayor & Council of Borough of Dunellen, 9 N.J. 548, 557 (1952). Moreover, the fact that the borough council voted in favor of the amendment will not cure the vice in the planning board's action. Cf. Hasbrouck Heights Hosp. Ass'n v. Borough of Hasbrouck Heights, 15 N.J. 447 (1954).
Plaintiffs claim that the above-mentioned member and two other members of the planning board were disqualified from sitting on the board in this matter because *284 of other personal or financial interests; but in view of the above decision we need not pass on the various questions thus raised. As to the circulation of a petition by one of them, addressed to the mayor and council urging the adoption of the zoning amendment, and the signatures on such a petition by the two other members mentioned, compare Hendrickson v. Borough of Point Pleasant, 65 N.J.L. 535, 537 (Sup. Ct. 1900); Batchelor v. Borough of Avon-by-the-Sea, 78 N.J.L. 503, 506 (E. & A. 1909); Michaelson v. Wall Township, 92 N.J.L. 72, 81 (Sup. Ct. 1918). Of course, a personal interest in the welfare of the community is not an interest of a disqualifying sort. As to the interest of nearly all businessmen in the borough in the general improvement of their businesses, cf. Batchelor v. Borough of Avon-by-the-Sea, supra; State v. Crane, Collector of Cranford, 36 N.J.L. 394, 401 (Sup. Ct. 1873).
It might be added that, as a matter of ethical practice under a statute such as N.J.S.A. 40:55-1.4, and quite apart from the obligations of the law, whenever a substantial question is raised as to the disinterestedness of one of several officials sitting on a matter, and the other officials can take care of the case, it usually is just as well for the official in question to withdraw therefrom, so that not the faintest shadow be cast on the integrity of the determination.
Because of the interest of one member of the planning board in the horsemen's kitchen, the judgment below must be reversed. However, in view of the circumstances, including the protracted litigation and the prospect that another attempt will be made to have this zoning amendment adopted (which could properly be done by a two-thirds vote of the governing body even if the planning board opposed the plan), we have concluded that it is incumbent on us to deal with the principal issues raised by plaintiffs. They argue that the amendment is arbitrary; that it violates N.J.S.A. 40:55-32; and that it constitutes an attempt to secure a variance in contravention of the Law Division's judgment.
The law of zoning seeks to lock areas of the community against intrusive forces; yet at the same time it provides *285 certain mechanisms of release, principally the variance and the amendment to the zoning ordinance. The variance operates to relieve a property of certain burdens in certain circumstances, Ranney v. Isituto Pontificio Della Maestre Filippini, 20 N.J. 189 (1955); whereas the amendment is concerned primarily with the welfare of the entire community and only incidentally with a landowner's burdens and rights. Raskin v. Town of Morristown, 21 N.J. 180, 196 (1956); Borough of Cresskill v. Borough of Dumont, 15 N.J. 238, 249 (1954); Rodgers v. Village of Tarrytown, 302 N.Y. 115, 96 N.E.2d 731, 735 (Ct. App. 1951).
The governing body, on the making of the amendment, was obliged to comply with N.J.S.A. 40:55-32, reading as follows:
"Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
With respect to the second sentence of this statute, it may be noted (though without putting too much stress on it) that plaintiffs' own expert witness testified that
"the highest and best use of the [Racing Association's] property as is at the present time is as a raceway."
Moreover, he also said of Zlotkin's property that its highest and best use was for commercial purposes.
However, plaintiffs direct our attention rather to the purposes particularly enumerated in the first sentence of this statute. They complain that the amendment here adopted is not designed "to lessen congestion," nor to "secure safety," nor to "promote health, morals," and clearly not to *286 "provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population."
But the addition of a business to a community rarely would lessen congestion, secure safety or promote health or morals, or achieve any of the purposes plaintiffs refer to. Where a zoning ordinance is amended so as to create a zone for business, including recreational business  such as the operation of a race track and appurtenant businesses  the first sentence of this statute usually would have pertinency only insofar as it requires that
"such regulations shall be in accordance with a comprehensive plan and * * * promote * * * general welfare."
General welfare is a familiar term. Regulations "promote * * * general welfare" if they lie within the police power, Fairlawns Cemetery Ass'n v. Zoning Comm., 138 Conn. 434, 86 A.2d 74, 77 (Sup. Ct. Err. 1952), and do not work solely for the advantage of an individual.
But what does the term "comprehensive plan" signify? It hardly seems to have reference just to the plan embodied in the zoning ordinance itself, because then the zoning scheme would be frozen and beyond amendment. The zoning law looks toward a stable, Lumund v. Board of Adjustment of Borough of Rutherford, 4 N.J. 577, 585 (1950), but not a static or unchangeable community. N.J.S.A. 40:55-35; Fischer v. Township of Bedminster, 11 N.J. 194, 205 (1952); Lionshead Lake, Inc., v. Township of Wayne, 10 N.J. 165, 173 (1952); Rodgers v. Village of Tarrytown, 302 N.Y. 115, 96 N.E.2d 731, 733 (Ct. App. 1951). Cf. Haar, "The Master Plan: An Impermanent Constitution," 20 Law & Contemp. Probs. 353 (1955).
The term "comprehensive plan" therefore signifies something other than the preexisting zone plan. Moreover, it has significance, even though, as in the case of the Borough of Freehold, there is no formal master plan. Indeed, since January 1, 1954 a planning board seems not to be required to make a master plan. N.J.S.A. 40:55-6; repealed, 40:55-1.10.
*287 Some slight clue to the significance of the term is perhaps to be found in the following explanatory note to section 3 of the Standard State Zoning Enabling Act (recommended by U.S. Dept. of Com., Hoover, Secy. of Com., 1926) from which N.J.S.A. 40:55-32 was largely taken:
"This will prevent haphazard or piecemeal zoning. No zoning should be done without such a comprehensive study."
A comprehensive plan, like the process known as municipal planning, should take account of the variant interests affecting the physical layout of the community, accommodating them to the interest of the community as a social unit. Grosso v. Board of Adjustment of Millburn Twp., 137 N.J.L. 630, 631 (Sup. Ct. 1948).
So far as the present case goes, we may say then that a comprehensive plan involves at least this  a comprehensive outlook on the community welfare as a whole, both at present and in the foreseeable future. Fairlawns Cemetery Ass'n v. Zoning Comm., 138 Conn. 434, 86 A.2d 74, 77 (Sup. Ct. Err. 1952). Other factors may be covered by the term, which require consideration under other circumstances, but they need not be dealt with here. See further Fairlawns Cemetery Ass'n v. Zoning Comm., supra; see the interesting discussion by Haar, "In Accordance with a Comprehensive Plan," 68 Harv. L. Rev. 1154 (1955).
The plan, impliedly laid out in the borough's zoning ordinance of 1924, of course did not take into account certain developments in this area which came along subsequently. The two large state highways, Routes 9 and 33 (Route 33 runs along Park Avenue, but in 1924 Park Avenue did not extend beyond West Main Street), with the traffic circle in the township, were put through since 1924. More important, pari-mutuel betting was legalized and the operation of this track grew into a big business, with a handle of $6,500,000 at this track in 1954, of which 10% goes to the track. One witness guessed that the track is now patronized by four or five times as many people as in 1925.
*288 These developments have brought significant changes in this area of the community. Of the larger triangle, above referred to, consisting of about 60 acres lying between the above-mentioned highways and extending into two municipalities, no part has ever been used for residential purposes. Segregated by these two big highways, this area, so far as it lies in the borough, is now (as the trial judge found) located practically "out of town." Incidentally, the part lying within the borough is not a tiny spot, but a tract of 26 acres. While the borough's population has not grown rapidly (1930  6,894; 1940  6,952; 1950  7,550), nevertheless there has been a substantial residential development in nearby sections of the borough, but this has gone on with obvious cognizance of the track and its various increasing businesses.
There has been another important change of condition since 1924. Of the larger triangle, above mentioned, so far as it extends into the Township of Freehold, the greater part, if not all, was placed in a commercial zone under the township's first zoning ordinance adopted in 1953; and in any event the balance was included therein under an amendment made in 1955, months prior to the court's determination below. In that zone a fairly wide variety of uses is permitted, including, inter alia, light industry, used car lots, race tracks, etc. In fact there are various businesses now located on the highways on or near the traffic circle at the apex of the 60-acre triangle, above mentioned, including a Chevrolet agency, a Studebaker and Packard agency, a pump sales and maintenance business, an ice cream sales establishment and two gas service stations. As plaintiffs' own expert conceded, the township's zoning plan would "influence" the 26 acres in question, lying in the borough, to be used eventually for commercial purposes.
Consideration is to be given to land uses permitted on contiguous properties in adjoining municipalities. Borough of Cresskill v. Borough of Dumont, 15 N.J. 238, 247 (1954); Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509, 513 (1949). For environment is *289 always a factor in zoning, even though it is created by structures placed on such properties outside the municipality. Bussett, Zoning, 92 (1940).
Plaintiffs argue that the borough, consisting of two square miles, has zoned 57 acres for business use (about 4% of this county seat), and still nearly 40% of the 57 acres is not used for that purpose, much being vacant land, with adequate parking facilities. But in computing the 57 acres, plaintiffs overlook the 26 acres devoted to the Racing Association's and Zlotkin's businesses which have been in operation for years. They are large businesses in this community, including the race track business, the pari-mutuel gambling, the restaurant, the bar, the selling of refreshments and the parking of cars.
Some emphasis has been placed by the plaintiffs on the "morals" (N.J.S.A. 40:55-32) of gambling, even though the gambling here is clearly authorized by law. It would be highly improper for the courts to allow themselves to be affected by such a consideration; it should make no difference whether we deal with a race track or other businesses, provided they have the sanction of the law.
This brings us to the close question in this case, namely, whether this amendment was genuinely put through for the benefit of the community as a whole, now and in the foreseeable future. Or was it put through solely for the selfish benefit of the Racing Association and Zlotkin? Undeniably the amendment had the effect of relieving the tract in question of certain burdens. But was it undertaken with a view to the welfare of the entire borough? Would it not be a fair test to ask ourselves if it would have been proper in 1924 to place the tract in a business zone  assuming it then had been subject to current conditions? If that is the test, we think judicial interference with such an ordinance in 1924 would have been unwarranted. In any event, the area in question was not wrenched in 1954 from a completely different environment and given a new rating. Chayt v. Maryland Jockey Club, 179 Md. 390, 18 A.2d 856, 858 (Ct. App. 1941); cf. Protomastro v. Board of Adjustment *290 of City of Hoboken, 3 N.J. 494, 501 (1950). In fact, the environment and rating will be little changed in the foreseeable future. Where a large business comes to town with as little prospect of disruption in the layout of the community as this appears to offer and which is regarded by local officials in a zoning amendment as being in accordance with proper community planning, is the court to be so presumptuous as to strike it down?
While there is little likelihood in the foreseeable future of businesses being conducted on this tract other than those currently there, cf. Conlon v. Board of Public Works of City of Paterson, 11 N.J. 363, 368 (1953), nevertheless we think the main design of the ordinance may be, not to lift restrictions from the tract, but to benefit the community as a whole. We have some doubts; but when in doubt, we sustain. Among other factors above stated, it must be borne in mind that this is distinctively a highway property, integrated with commercial property in the township.
Indeed, we should always be most reluctant to interfere with the legislative process, whether at the municipal or higher level. Our conclusion is that an amendment such as this, properly acted upon by the planning board and duly adopted by the borough council, could not be deemed to be so clearly contrary to the broad community zoning aims of the borough as to require us to nullify it.
The burden rests on a party attacking an ordinance to rebut the presumption of validity which attaches to it, Fischer v. Township of Bedminster, 11 N.J. 194, 204 (1952), Cobble Close Farm v. Board of Adjustment of Middletown Twp., 10 N.J. 442, 451 (1952); but, to succeed, he must establish manifest abuse. Ward v. Scott, 16 N.J. 16, 23 (1954).
However, for the reasons above stated, the judgment below is reversed.