60 N.J. Super. 367 (1960)
158 A.2d 722
GERALD C. McNAMARA, SADDLE RIVER COUNTRY DAY SCHOOL AND CHESTNUT RIDGE LAND CO., INC., PLAINTIFFS,
v.
BOROUGH OF SADDLE RIVER, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 14, 1960.
*368 Mr. Frederick J. Gassert for the plaintiff Gerald C. McNamara (Messrs. Gassert, Murphy & Gassert, attorneys).
Mr. James A. Major, attorney for the plaintiffs Saddle River Country Day School and Chestnut Ridge Land Co., Inc.
Mr. Bruce H. Losche for the defendant Borough of Saddle River (Messrs. Losche & Losche, attorneys).
BROWN, J.D.C. (temporarily assigned).
This case involves the validity of an amendment of the Borough of *369 Saddle River zoning ordinance. The amendment was enacted by Ordinance No. 105 which provided for the regulation of private and parochial schools as to location in residential zones and as to site requirements. The plaintiff Gerald C. McNamara is a resident property owner. The plaintiff Chestnut Ridge Land Co., Inc. is the owner of approximately 20 acres of land in the borough which property is leased to the plaintiff Saddle River Country Day School for the purpose of operating a private school. The latter plaintiff will be referred to as "the school" hereinafter.
These plaintiffs by this proceeding in lieu of prerogative writ have challenged Ordinance No. 105 on the grounds that it discriminates against private and parochial schools on the one hand and public schools on the other; requires minimum standards which bear no reasonable relationship to school operation; discriminates against parochial schools; and is voidable because of enactment by the vote of a councilman disqualified by interest in the subject matter.
This issue concerning Councilman Wollen's participation in the enactment of Ordinance No. 105 requires primary attention. It must be considered in an extended context.
A substantial part of the environment is provided in the Appellate Division opinion in the consolidated cases of Saddle River Country Day School v. Borough of Saddle River (Wollen v. Saddle River Country Day School) reported in 51 N.J. Super. 589 (App. Div. 1958). Judge (now Justice) Hall described therein the general character of the Saddle River community and the chronology of events which brought the school and the borough into court for the initial litigation.
The Appellate Division determined that the zoning amendment proviso concerning school locations was invalid. On April 7, 1959 this judgment was affirmed by the Supreme Court on the opinion below, 29 N.J. 468.
The borough adopted Ordinance No. 105 on June 15, 1959. By its provisions, the zoning ordinance was amended to provide standards and procedures for the location of *370 private and parochial schools in residential zones. Among the "basic standards" stipulated is the following:
"The minimum site area for an elementary (Primary) school (such school being one which includes grades numbers one through eight) shall be five (5) acres, plus one additional acre for each seventy-five (75) pupils. The minimum site area for an intermediate or high (secondary) school (such school being one which includes grades nine through twelve) shall be fifteen (15) acres, plus one additional acre for each twenty-five (25) pupils. Not more than twenty (20%) per cent of the site shall be covered by buildings."
It is further provided by the amending ordinance that this standard, like the others, is a minimal guide subject to special or unusual factors in a given case. Board of adjustment recommendation for a permit is made subject to review by the governing body. The latter is empowered to approve with additional limitations.
According to the testimony of Douglas Ogilvie, headmaster of the school in question, it is now planned to accept students for grades 5 or 6 through 12. It was his opinion that optimum function of the school will require a student body of 200 to 250. The tract of about 20 acres will support an establishment of that size, he said. The effect of the quoted minimum site area requirements is to limit the enrollment of the school to a maximum of 125 pupils based upon the estimated acreage. A permit has been issued for 124. The circumstances outlined in Judge Hall's opinion and the continuing development of the situation as unfolded in the trial of the present action furnish the totality of background necessary for determination of the issue presented. The conduct of Mr. Wollen must be examined with relation to this context.
It is Wollen the citizen who moves through the first phase of the municipal proceedings. It is Councilman Wollen who acts at the end. His involvement in both of these capacities vis-a-vis the school creates a conflict of interest according to the plaintiffs. He was one of the individual *371 litigants who filed a separate suit against the school substantially on the same basis and for the same relief as in the municipality's counterclaim in the prior action. Thereafter he was elected a councilman of the borough and he voted to enact the challenged ordinance.
The defendant urges that Mr. Wollen acted at all times on the strength of a personal conviction that private schools should be regulated. This was "what was right for the community." His belief in this principle consistently motivated him as an individual party plaintiff in prosecuting the action against the school, in his candidacy for election to the borough council and in his vote as a councilman. The law could not require him as an office holder to reverse the public position he had taken as a citizen.
There can be no dispute with the proposition of law upon which the argument depends. It was laid down in the case of Wollen v. Borough of Fort Lee, 27 N.J. 408 (1958), where the Supreme Court said:
"* * * it would be contrary to the basic principles of a free society to disqualify from service in the popular assembly those who had made pre-election commitments of policy on issues involved in the performance of their sworn legislative duties. Such is not the bias or prejudice upon which the law looks askance." (at page 421 of 27 N.J.)
But the position of Councilman Wollen emerges from the record in a somewhat more complicated aspect. The contention of disqualifying interest is not so readily resolved. There are features of his private citizen activity which do not match the suggested pattern.
Mr. Wollen and his wife, together with ten other owners of property in the immediate vicinity of the proposed school, joined as plaintiffs in an action against it. Their suit was to restrain alteration of the building except in conformity with a building permit properly issued in accordance with the code and use of the premises as a school until compliance with the newly enacted zoning ordinance amendment.
*372 In this litigation Mr. Wollen had occasion to express his personal attitude to some degree. In the complaint he described his property as "abutting the southerly side of Woodcliff Lake Road approximately opposite a portion of the [school] premises." By his verification of the pleading he adopted the allegation that the threatened school use and development would "* * * discourage the most appropriate use of land within the Borough, and * * * impair the value of property of the plaintiffs * * *." An amendment to the complaint further alleged that such use "* * * will adversely and detrimentally affect said neighborhood, will greatly impair the value of plaintiffs' properties, and will result in irreparable harm and damage to the plaintiffs in the enjoyment of their respective properties and in the value thereof * * *." The amended complaint demanded a permanent injunction against use of the premises as a school per se as well as against such use without compliance with the ordinances. These contentions were carried into the pretrial order by the statement "that the use of the p in q as a private school will result in irreparable damage to the individual plaintiffs as property owners in the vicinity."
From the foregoing it appears that Mr. Wollen viewed the very existence of the school with an alarm related to its impact upon his property and his neighborhood. This narrow concern was further evidenced by his affidavit in the suit where, under date of August 29, 1957, he stressed the fact the school was formed as a legal entity "* * * subsequent to a strong movement within the Borough against the conversion of the proposed residence * * *." He explained, in the same affidavit, his reasons for the conclusion that no private school was necessary in the municipality.
The school's "opposition" was described by Judge Hall in the consolidated Wollen case as having been "developed to the proposed use of the property" and with a purpose "to block the proposal" (51 N.J. Super., at page 596 of the opinion). The court further characterized the opponents *373 as being against the school itself, in these words: "Petitions of opposition were circulated and filed and some 300 citizens appeared at the meeting of the Mayor and Council on July 12 urging action to prevent school use of the premises." The individual plaintiffs in the Wollen case were then identified by the court as being "opposing property owners." (51 N.J. Super., at page 597.)
The status of Mr. Wollen in the controversy as that of a citizen concerned only with the need for "regulating" the school cannot be constructed out of such circumstances as these. How he felt about the school has been made abundantly evident by his testimony in the present action.
Mr. Wollen said that he participated in mass and private meetings supporting the movement for regulation. He gravitated into the position of being chosen as a leader. The group of which he was a member retained an attorney to prosecute the action wherein he was a plaintiff. Mr. Wollen contributed to the payment of the attorney's fee. It is noted in Judge Hall's opinion that the attorney appeared for the group prior to enactment of the voided zoning amendment which incidentally he had prepared. (51 N.J. Super., at page 597.)
Mr. Wollen testified, in a deposition in this action (P-1 in evidence), that in his opinion the school property was an "entirely improper" location for a school building. "I think it is downgrading the entire neighborhood and without question the most valuable residential section of the Borough." It was his belief that the school should be situated in some other part of the municipality. On the trial he testified that he did not think of "downgrading" entirely in the sense of financial loss. With the school in the proposed location, he testified, "I would have lost the entire purpose of my coming into that community." Because of this state of mind, he and others offered to buy the school tract from John C. Alford, the owner, at a price which would reimburse his cost. They were prepared to pay the sum of $105,000, *374 or such reasonable additional amount as would make him whole.
Mr. Wollen further testified on the trial that he would have paid the entire amount personally if the school did not open. He would do this regardless of what others might contribute. This action would be in what he called a "sentimental" as opposed to a financial interest. In the deposition he said this would be "the lesser of two evils of seeing the property depreciated." And if the offer had been accepted by Mr. Alford "then the property would not have been used as a school even under regulation."
Before the Wollen litigation against the school was terminated by the Supreme Court decision, his group retained experts who prepared a regulatory ordinance. It was subsequently made available to the borough ordinance committee. In substance it is Ordinance No. 105.
Mr. Wollen was sworn into office as a borough councilman on January 1, 1959. Ordinance No. 105 was introduced at a council meeting on May 15, 1959. He did not vote on this occasion for reason of what he later termed to be "a misplaced conception of sportsmanship." The public hearing on the ordinance was held on June 15, 1959, after the filing of a statutory protest against its passage which was known to him. The ordinance was enacted on that occasion by a split vote, with Councilman Wollen voting in the affirmative.
The conclusion that Mr. Wollen moved against the school because of a civic interest in what was right for the community is not supported by the evidence. He was not concerned simply with the regulation of schools in general or of this school in particular. I find his purpose was to stop the establishment of a school at the premises in question. And I further find that he was motivated by his personal interest as a property owner in the immediate vicinity.
Notwithstanding, it is the conduct of Councilman Wollen and not Wollen the citizen which is necessarily the subject of attack. The challenged ordinance will stand unless it is *375 demonstrated that he had a personal or private interest at the time of the council action which barred his vote.
The defendant argues that Ordinance No. 105 was enacted in the exercise of a purely legislative function and therefore that there cannot be a judicial review thereof except in special circumstances not present here. The court in Aldom v. Borough of Roseland, 42 N.J. Super. 495 (App. Div. 1956), did not hold that the function of the council was quasi-judicial solely for the reason mentioned in the defendant's brief. The opinion cites four reasons for the determination:
"However, here the function was not exclusively legislative; it partook sufficiently of the quasi-judicial to warrant examination by the courts. The superintendence of the council over the approval by the planning board of the zoning changes, the deliberative function involved in considering the conflicting arguments which arose at the required public meeting, the fact that only one person controls about 90% of the benefited land, and, in the factual setting, the nature of the decision to exercise the police power, which is at the root of all zoning, cannot be ignored."
In the factual setting of the present case with its background of public contention described in the Appellate Division opinion, the deliberative function of the council in this exercise of the zoning power was quasi-judicial. And the process called for the exercise of discretion by the governing body according to the weight of conflicting public considerations making it judicial in quality according to the test established in Pyatt v. Mayor and Council of Borough of Dunellen, 9 N.J. 548 (1952). To be taken into account is the fact that the ordinance, although general in terms, affected only a single situation. The council's action is subject to judicial review.
The point of view which Mr. Wollen formed as a citizen property owner survived, to some degree, his induction into public office. The fact of the matter is a necessary inference. Any doubt about it is dispelled by his testimony during cross-examination on the trial. He stated that when *376 he voted for the ordinance he was still of the opinion that the opening of the school caused loss of "the entire purpose of my coming into that community." A temporary sense of "sportsmanship," although "mistaken" at the time, induced him to leave the council chamber when the measure was up for first reading.
Whatever the legal consequences may be, Councilman Wollen had an adversary interest in the school at the time he voted for Ordinance No. 105.
In the cases where ordinances have been held to be voidable because an interested member of the public body participated in enactment, there is ordinarily present an element which is absent here. Customarily the official action confers a potential benefit by alteration of the status quo. The early case of West Jersey Traction Co. v. Board of Public Works, 56 N.J.L. 431 (Sup. Ct. 1894), affirmed 57 N.J.L. 313 (E. & A. 1895), presented typical facts. The municipal body took action by which a railroad company was authorized to build tracks along any street. One of the board members who voted for passage of the ordinance was, at the time, a stockholder in the company. The action was held to be voidable because of this relationship to the beneficiary of the action and the ordinance was set aside.
Each of the decisions cited by both sides in the present case involved a similar situation. In every instance there was a rearrangement of regulatory framework as a consequence of which someone derived an advantage, actual or alleged. The problem for the court was to determine whether the voting member was so connected to the advantage as to be disqualified by personal interest.
That is not the situation in the case sub judice. Here the municipal action was negative in nature. It created no new rights through which, in a derivative sense, the personal interest of the voting member would be subserved.
Councilman Wollen was thus circumstanced at the time of his vote in a manner different from the situations presented in the precedents. The court has been unable to *377 find decisional law directly in point in any jurisdiction. The ultimate question framed for decision is the following: If as a citizen he opposed the establishment of the school, was Councilman Wollen qualified to vote on an ordinance to limit the size to which it can expand?
Implications for an answer can be found in Cobble Close Farm v. Board of Adjustment of Middletown Tp., 10 N.J. 442 (1952). There one basis upon which the plaintiff sought to invalidate the denial of a variance was that the board of adjustment was influenced by a prejudiced member, one Booker, who participated in part of the proceedings. The plaintiff's property was located in the municipality's Zone A which was primarily a district of substantial homes on sizeable plots. According to the opinion of the Supreme Court, 10 N.J., at page 450:
"The residents of Zone A take a live interest in the maintenance of the zoning standards and the preservation of the character of the district. There are two community organizations, Blossom Cove Road Association and Riverside Drive Protective Association, which took an active part in the proceedings below in opposition to the relief sought by plaintiff from the board of adjustment."
Booker, as president of one of these associations, was present at its meeting when the vote was taken to oppose the plaintiff's application. At the outset of the board hearing Booker was challenged on the ground that he had prejudged the case. He did not at once withdraw but did so before the end of the case. He took no part whatever in the deliberations or vote upon the decision of the board. Because there was no evidence that the other board members were in any manner influenced by Booker, the court held that there was no infection of the self-interest taint.
If there is no dispositive authority, there is at least a recognition in the cases that the very nature of the problem requires the inductive approach. As the Supreme Court pointed out in Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258 (1958):
*378 "The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case. * * * No definitive test can be devised. The question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty." (at page 268)
What the public policy requires is the exercise of the official duty unaffected by personal considerations. In the case of Councilman Wollen's official action there is no evidence of a departure from his sworn public duty in any form of personal advantage. But in the subject matter of the legislation he had a well developed and intense private concern. Its very presence could have impaired his capacity to act in the interest of the citizens at large. As the court declared in Piggott v. Borough of Hopewell, 22 N.J. Super. 106 (Law Div. 1952):
"The interest which disqualifies a member of council to vote is a personal or private one, not such an interest as he has in common with all other citizens or owners of property * * *." (22 N.J. Super., at page 111)
To the extent that there may be an impediment to independent, unprejudiced discretion there is a qualified devotion to the public duty. This is less than public policy demands. The citizens of the community have the right to expect that in everything that appertains to their business and welfare, the judgment of the public official will be undiluted by a concern primarily related to welfare which is his own. The severity of the discipline was made clear by the court in Aldom v. Borough of Roseland, supra, 42 N.J. Super., at page 500 of the opinion: "The law tolerates no mingling of self interest; it demands exclusive loyalty."
The same case provides the rule for decision:
"Basically the question is whether the officer, by reason of a personal interest in the matter, is placed in a situation of temptation to serve his own purposes to the prejudice of those for whom *379 the law authorizes him to act as a public official. And in the determination of the issue, too much refinement should not be engaged in by the courts in an effort to uphold the municipal action on the ground that his interest is so little or so indirect." (42 N.J. Super., at page 502)
The honesty of Councilman Wollen is not impugned. There is no proof to make an issue of his character. The qualities, of whatever nature, which actuated his vote are not material. Ames v. Board of Education of Montclair, 97 N.J. Eq. 60 (Ch. 1925). It is "interest" which disqualifies. The purpose of the law is "prophylaxis against misconduct and its effect can be exerted fully only if it is applied undiscriminatingly where applicable." Zell v. Borough of Roseland, 42 N.J. Super. 75, 82 (App. Div. 1956).
Under all the circumstances of the present case, Councilman Wollen's interest in the subject matter of Ordinance No. 105 invalidates it and it is therefore set aside.
This conclusion makes unnecessary a consideration of the challenged ordinance itself.