Carter N. COFFIN and V. C. Akers, Plaintiffs-Respondents,

v.

The CITY OF LEE'S SUMMIT, Missouri, Irene Lavery, Union Construction Company, Miller J. Fields and Jack Janes, Jr., Defendants-Appellants.

Nos. 23409 and 23410.

Kansas City Court of Appeals.

Missouri.

April 2, 1962.

Charles C. Shafer, Jr., Kansas City, for appellants.

Donald C. Earnshaw, Lee's Summit, George V. Aylward, Kansas City, for respondents.

HUNTER, Presiding Judge.

Appellants, the City of Lee's Summit, a fourth class city; Irene Lavery, its City Clerk; Union Construction Company; Miller Fields and Jack Janes, Jr., appeal from a judgment of the Circuit Court of Jackson County holding that Ordinance No. 646 of the City of Lee's Summit is invalid because Fields and Janes, Aldermen, had "either a direct, personal, financial or pecuniary interest" in its passage.

Respondents, Carter N. Coffin and V. C. Akers, are the owners of property comprising 8.55% of the total area within a designated protest area, and Akers' portion adjoins the property of Union Construction Company. See, Section 89.060 RSMo 1959, V.A.M.S.

Union Construction Company, (hereinafter called "Union"), a Missouri Corporation, engages in the quarry, rock-crushing, asphalt and general lime-stone business. It is the owner of a tract of land of approximately 140 acres located within the city limits of Lee's Summit.

On March 16, 1960, Union filed an application with the Board of Aldermen to rezone its property as provided in Zoning Ordinance No. 608, so as to place it within a zoning classification that would permit it to engage in the business mentioned above.

Zoning Ordinance No. 608 is the comprehensive ordinance zoning all of appellant City. It provides in part that all area within the city limits of Lee's Summit not otherwise designated was zoned "residential". It also provides for the amendment of the ordinance, including changes in zone boundaries. Union was in an undesignated, hence residential, area but was claiming a right to carry on its business as a nonconforming use.

Pursuant to the procedure required in Ordinance No. 608 the City Zoning Commission published a Notice of Public Hearing for May 4, 1960. The Chamber of Commerce and Real Estate Board recommended the rezoning requested by Union and many home owners opposed it. As a result of this public hearing the City Zoning Commission found the requested rezoning would result in the most appropriate use of the land involved. Subject to numerous conditions it recommended Union's land be placed in a zone permitting its described business by amending Zoning Ordinance No. 608 by changing "District C-Highway, Business and Industrial" to include mining and quarry operation and by adding in the area designated "District C" the legal description of Union's land. Also, it recommended certain changes in paragraph 9 of Ordinance No. 608. As drafted, Ordinance No. 646 added a new district "C-Q-Quarries, Mines and Related Industries", and established performance standards and safeguards applicable to the new district.

Thereafter, the Board of Aldermen published Notice of a Public Hearing on October 10, 1960, on the matter. After this hearing the Board of Aldermen went into

legislative session with all six members and the Mayor present. Ordinance No. 646 was introduced, read three times, and passed by a vote of 5 to 1. Two of the favorable votes were cast by Aldermen Fields and Janes. The Mayor, who had veto powers, signed the ordinance.

Thereafter, respondents filed this petition for Declaratory Judgment and for Temporary Injunction, alleging that Aldermen Fields and Janes had a direct personal interest involved in the ordinance and that the ordinance was invalid because of the improper votes they cast in favor of its passage.

At the circuit court hearing it was developed that Alderman Fields owns one-third of the stock of the Lee's Summit Ready Mixed Concrete Company, and is the president of that company, and that Union owns the remaining two-thirds of its stock. Fields has no connection with Union and does not own any stock in Union. He does not receive any pay, compensation, commission or other remuneration from Union. Nor does the Ready Mixed Concrete Company own any portion of Union. The concrete company is operating from the location of Union. Fields, probably on behalf of the concrete company, after several months of negotiation on November 21, 1960, leased some land from Union.

It was also developed at the trial that Alderman Janes, among his numerous employments, was an employee of Herb Loeffler, a contract hauler. Among Loeffler's numerous customers were Lee's Summit Ready Mixed Concrete Company and Union. Janes was employed as a truck driver by Loeffler and hauled materials to and from many of Loeffler's customers, including Union but not the Ready Mixed Concrete Company. Janes stated the passage of the ordinance did not in any way give him any personal benefit, compensation, remuneration, or enhance him financially.

The trial court found that "Alderman Fields and Alderman Janes had either a direct, personal, financial, or pecuniary interest in the passage of Ordinance No. 646; that * * * although having received the favorable vote of five of the six Aldermen * * * (it) is invalid under the law and against public policy."

All the parties agree that the accepted rule of law is a personal or financial interest does disqualify a member of a municipal council from participating in an official action of a judicial, quasi-judicial or contractual nature. See, Annotation, Public Officers-Personal Interest, 133 A.L.R. 1258, 62 C.J.S. Municipal Corporations § 402, page 761.

It is the position of appellants that the enactment of Ordinance No. 646 was the exercise of a purely legislative function by the City Aldermen, and that the motives or interest of the governing body of a municipal corporation in adopting an ordinance, legislative in nature, cannot be the subject of judicial inquiry. They also contend Aldermen Fields and Janes had no interest in Ordinance No. 646 and were entitled to cast valid votes for its adoption.

In the absence of any decision in this state on the subject appellants cite outstate and secondary authorities including, City of Miami Beach v. Schauer, Fla.App., 104 So. 2d 129. In that case suit was brought to have an ordinance amending the comprehensive zoning ordinance declared invalid because one of the favorable votes was cast by a councilman who frankly and publicly admitted he owned some of the oceanside property to be affected and that this property would be increased by more than $500,-000.00 in value as a result of its change in zoning from private residence to hotel district. The amendment was accomplished by the required affirmative votes of five of the seven members of the City Council. Plaintiffs alleged the action of the City Council in amending the zoning ordinance was quasi-judicial and that because the financially interested councilman's vote was necessary for its passage the ordinance was invalid. In considering and ruling on these conten-

tions the Florida District Court of Appeals declared:

"It is well settled that the motives of the governing body of a municipal corporation, in adopting an ordinance legislative in character, will not be the subject of judicial inquiry. It is also established that the actions of judicial tribunals or of bodies acting quasi-judicially are subject to judicial scrutiny and review.

\*   \*   \*   \*   \*   \*

"On the question, vital to the decision of this case, of whether the passage of this ordinance amending the comprehensive zoning ordinance was legislative or quasi-judicial action of the city, we hold that the city council was not acting in a quasi-judicial capacity, but in the exercise of its legislative powers.

\*   \*   \*   \*   \*   \*

"We have been shown no convincing authority holding that an ordinance amending such a comprehensive zoning ordinance would be quasi-judicial action. That question was raised in the case of Blankenship v. City of Richmond, 188 Va. 97, 49 S.E.2d 321. In that case the court had before it for consideration a similar ordinance enacted to change the zoning classification of a particular area, and, as here, it was contended that the interest of one of the city officials whose vote was involved in the amendment disqualified him for interest. In order to avoid the rule that the motives of those involved in legislative action will not be inquired into, the argument was advanced that although the comprehensive zoning ordinance represented legislative action by the city, an ordinance passed for the purpose of changing or amending the original zoning ordinance would be considered quasi-judicial action. In rejecting that contention the Virginia court said (49 S.E.2d at page 325):

" 'It would be flagrantly inconsistent to hold that the adoption of a comprehensive zoning law is legislative in character and that the amendment to such a law was a quasi-judicial act. If the original act is wholly legislative, an amendment to it partakes of the same character.'

"In support of the contention that the action in this instance was quasi-judicial, appellees call our attention to the fact that the city council's action involved the receiving of testimony, the weighing of evidence and consideration of various facts and circumstances, as is done by judicial bodies. In enacting laws legislators necessarily must be advised on such matters. Their diligence in becoming so informed prior to making such enactments does not change the character of their action from legislative to quasi-judicial. What has just been said, of legislative bodies, should not be construed as holding that the action of legislative committees or sub-committees, or zoning boards, which are required to hold hearings and make reports in the form of findings and conclusions or recommendations, do not operate quasi-judicially.

"Therefore, when legislative rather than quasi-judicial action is involved, the authorities appear uniform in holding that, in the absence of a showing of fraud, the motives of a city council will not be subject to judicial scrutiny.

\*   \*   \*   \*   \*   \*

"The rule was stated by the Supreme Court of the United States in Angle v. Chicago, St. P., M. & O. R. Co., 151 U.S. 1, 14 S.Ct. 240, 247, 38 L.Ed. 55, 64, as follows:

" 'The rule upon which this decision rests has been followed in many cases, and has become a settled rule of our jurisprudence. The rule, briefly stated, is that whenever an act of the legislature is challenged in court the inquiry is limited to the question of power, and

does not extend to the matter of expediency, the motives of the legislators, or the reasons which were spread before them to induce the passage of the act. This principle rests upon the independence of the legislature as one of the co-ordinate departments of the government. It would not be seemly for either of the three departments to be instituting an inquiry as to whether another acted wisely, intelligently, or corruptly. * * *'

* * * * * *

"It should be noted that we are not concerned here with a contractual agreement with a municipality in which a councilman has a personal interest. This case involves a legislative enactment. (Citations omitted.)

"Under existing law the personal interest of councilman Halperin, and the fact that he stood to receive substantial gain from the action of the city council in which he took part, did not operate to disqualify him or destroy the effectiveness of his vote. As pointed out above, the court was not authorized to inquire into his motives as a legislator and to disqualify him for his interest. Such a disqualification of a member of the city council would have to be provided for by legislation.

* * * * * *

"We refrain from comment on the moral aspects involved, because the holding of this court must be based on law and not on moral considerations."

The Schauer case was reviewed by the Supreme Court of Florida in Schauer v. City of Miami Beach, Fla., 112 So.2d 838, 71 A.L.R.2d 562, and by a four to two vote was affirmed. Referring to the intermediate appellate court's decision the Supreme Court said, loc. cit. 839:

"Then the court announced the opinion that the passage of the original

zoning ordinance as well as the amending ordinance were the exercise of a legislative function. We agree with the conclusion notwithstanding the decision in Aldom v. Borough of Roseland, 42 N.J.Super. 495, 127 A.2d 190, upon which the chancellor relied, but which, in the view of the district court and, now of this court, is isolated authority for the proposition that such action by a city council is quasi-judicial.

"It is obvious to us that the enactment of the original zoning ordinance was a legislative function and we cannot reason that the amendment of it was of different character.

"In its opinion the district court referred to abundant respectable authority for the position that once the legislative nature of the action is established the barrier against judicial incursion is erected.

* * * * * *

"Regardless of our concepts of political morals, we are bound by the historical organic prescription that we recognize the line that separates the exercise of legislative power from judicial power. Only chaos would result from the assumption of power by the judiciary to measure the validity of legislation by the motivating factors that induced a Legislator to support the measure."

The dissenting opinion refers to numerous New Jersey decisions stating that amendments to comprehensive zoning ordinances to take care of hardship cases, or to meet changes in the character of the neighborhood, should be treated as "quasi-legislative-judicial municipal activity" and thus subject to court scrutiny of the motives and personal interest of those who vote for it.[1] The dissenting opinion concludes, "To

1. For New Jersey cases, see, McNamara v. Borough of Saddle River, 60 N.J.Super. 367, 158 A.2d 722; Aldom v. Borough of Roseland, 42 N.J.Super. 495, 127 A.

give judicial approval to conduct so obviously opposed to the traditional standards of morals and ethics required of our public officials is to admit a failure in our judicial system; and I, for one am unwilling to concede that an ordinance enacted under such circumstances is beyond the reach of the judicial process."

The Schauer decision was discussed in 57 Mich.Law Rev. 423, its author noting, "Courts and secondary authorities subscribe to the general rule that when a municipal council exercises legislative power delegated to it by the state, the courts will not consider the motives or self-interest of the members in passing upon the validity of the action. A government body acts in a legislative capacity when it prescribes a general course of conduct applicable to persons or property within its jurisdiction. Action in a quasi-judicial capacity occurs when the body grants or denies a privilege based upon a finding of fact that circumstances exist which require the application of a general rule." Referring to the case of Aldom v. Borough of Roseland, 42 N.J. Super. 495, 127 A.2d 190, the author criticised its holding that a zoning amendment can be treated other than legislative, saying " * * * the nature of the legislative function should not be altered because evidence is received upon which a decision to legislate is predicated. The reasoning of the Aldom case seems to confuse an amendatory zoning ordinance with the granting of a variance."

In Blankenship v. City of Richmond, 188 Va. 97, 49 S.E.2d 321, 323, the Supreme Court of Virginia in holding that courts may not invalidate an amendment to a zoning ordinance because of the personal or financial interest of members of the City Council voting on it said, " * * * where a member of the legislative branch of the government offends in these particulars in performance of a purely legislative duty, he is answerable to the electors from whom he

derived his official position and not to the courts which have no power to inquire into the motives which prompted his action on a purely legislative matter." * * * "An ordinance that regulates or restricts the use of property regulates or restricts conduct with respect to that property and is purely legislative." * * * "It would be flagrantly inconsistent to hold that the adoption of a comprehensive zoning law is legislative in character and that the amendment to such a law was a quasi-judicial act. If the original act is wholly legislative, an amendment to it partakes of the same character." * * * " * * * the common council was acting in a legislative capacity, and the courts generally hold they cannot inquire into the motives of members of a municipal council for the purpose of determining the validity of ordinances, which are not contractual, but wholly legislative in character."

Turning to other authorities that have considered the question, we are constrained to conclude that generally these authorities support the view that an amendment to a comprehensive zoning law is a purely legislative function. Typical is 8 McQuillin, Municipal Corporations, (3rd Ed.) Sec. 25.-54, page 119, which states: "It is fundamental that the enactment of a zoning ordinance constitutes the exercise of a legislative and governmental function. It is an exercise of legislative power residing in the state and delegated to a municipal corporation. Likewise, the amendment of a zoning ordinance is a governmental function."

The most recent discussion of the subject is contained in the Annotation, "Zoning—Inquiry Into Motive", 71 A.L.R.2d 568. After noting that the authorities are not in full agreement, it is there said, "Most follow the general rule, applicable to municipal ordinances, that if a statute appears on its face to be constitutional and valid, the court cannot inquire into the motives of the legislature. Consequently, they refuse to con-

2d 190; S & L Associates, Inc. v. Washington Twp., 61 N.J.Super. 312, 160 A.2d

635. Also, Low v. Town of Madison, 135 Conn. 1, 60 A.2d 774.

sider, in determining the validity of a zoning ordinance, the motives of the members of the municipal zoning authority which approved or adopted the ordinance." [2] The annotator suggests a more even division of the authorities where there is a direct financial interest on the part of the legislator.

The question before us involves the proper relationship between the judiciary and the legislative departments of the government. See, 71 A.L.R.2d 569. On the one hand it is claimed that public policy dictates courts should strike down even purely legislative acts when those casting votes necessary to the passage of the ordinance or act have a financial or personal interest in the passage thereof. See, Piggott v. Borough of Hopewell, 22 N.J.Super. 106, 91 A.2d 667.[3] On the other hand it is just as strongly claimed that public policy forbids one branch of government, judicial, from invalidating the legislative acts of a co-ordinate branch of government by inquiring into the motives, personal or financial interest of its members voting thereon. See, Gardner v. City of Bluffton, 173 Ind. 454, 89 N.E. 853, 90 N.E. 898; Story v. City of Macon, 205 Ga. 590, 54 S.E.2d 396; Robertson v. City of Salem, D.C., 191 F. Supp. 604, 610; 37 Am.Jur., Municipal Corporations, Sec. 69, page 682. Those few adopting the former view experience some difficulty in drawing the line as to what is a sufficient interest on the part of a legislator to disqualify his vote if judicial scrutiny is undertaken.

In many jurisdictions the courts very properly have been spared this problem by the legislative body itself determining whether the personal or financial interest of a legislator in the outcome of the legislation shall disqualify him from voting in purely legislative matters and by statute or ordinance establishing the standards the courts are to apply.[4]

On the facts before us we have concluded that while the related circumstances raise a suspicion, the evidence falls short of demonstrating that either of the two Aldermen had a direct financial interest in the passage of the ordinance. We do not undertake to say how much personal interest, other than financial, they may have had.

The courts of this state have not yet held that there is an overriding public policy which requires them to scrutinize purely legislative action and to set aside resultant ordinances or statutes because of financial or personal interest of members of the legislative body participating in their enactment. On the facts presented in evidence concerning the interests of these two Aldermen, which at least to some extent are indirect and remote, we decline to adopt or apply such alleged public policy. These facts before us do not present a situation where this court can say that it is clearly in the public interest for the court to examine the personal interest, financial interest or motives of the members of the legislative body of the City in exercising its legislative function in enacting the amendment to the Comprehensive Zoning Ordinance of the City. See, Annotation, 133 A.L.R. 1261; La Rue v. Township of East Brunswick, 68 N.J.Super. 435, 172 A.2d 691.

2. For other support of this view, see R. I. Home Builders v. Budlong Rose Co., 77 R.I. 147, 74 A.2d 237.

3. Ordinarily there is a statute or ordinance involved which prohibits voting by a person who has a personal or financial interest in the outcome of the vote.

4. Pennsylvania in its constitution has made it the public policy of that state that a public official may not use his official power to further his own interests. See,

Genkinger v. City of New Castle, 368 Pa. 547, 84 A.2d 303, 305(7). New Jersey, see, N.J.S.A. 40:55-1.4; Van Itallie v. Borough of Franklin Lakes, 28 N J. 258, 146 A.2d 111. 115; Hochberg v. Borough of Freehold, 40 N.J.Super. 276, 123 A.2d 46(4); Zell v. Borough of Roseland, 42 N.J.Super. 75, 125 A.2d 890. Connecticut: Mills v. Town Plan and Zoning Commission, 144 Conn. 493, 134 A.2d 250. Florida: Fossey v. Dade County, Fla.App., 123 So.2d 755–57.

Appellants have made numerous other contentions of error. They need not be examined in view of the result we have reached.

The judgment, including the restraining order it contains, is reversed.

All concur.