## GEORGE DUDLEY IVERSON, V *v.* ZONING BOARD OF HOWARD COUNTY ET AL.

[No. 11, September Term, 1974.]

*Decided July 26, 1974.*

The cause was argued before GILBERT, MENCHINE and DAVIDSON, JJ.

*Bernard F. Goldberg* and *Richard B. Talkin* for appellant.

*James B. Dudley* and *Thomas E. Lloyd* for appellees.

GILBERT, J., delivered the opinion of the Court.

Howard County, situate between the city of Baltimore and Washington, District of Columbia, has, as a result of population shifts and migrations from those two cities, experienced a growth in its own population. Howard County's growth, and its potential growth, would appear to increase rezoning applications in order to augment permissible density in a given area. This is such a case.

The appellant, George Dudley Iverson, V, filed a petition to "rezone approximately 439 acres of land from an R-90 Zoning District [residential zoning, but building lots must be at least 90,000 square feet] to an R-20 Zoning District [residential zoning, but building lots must be at least 20,000 square feet]". The Howard County Planning Board recommended that appellant's petition be denied. Two individual protestants, Phillip Carroll and James Clark, Jr., also appellees here, who are abutting land owners, testified against the proposed rezoning. The Howard County Zoning Board, after hearing the matter on October 10, 1972 and October 11, 1972, rendered its decision on February 2, 1973,[1] in which it refused to grant the rezoning. Appellant filed an appeal to the Circuit Court for Howard County. He set forth nineteen enumerated reasons, some of which were subdivided, why the Howard County Zoning Board should be reversed, but Judge T. Hunt Mayfield affirmed the Zoning Board. In this Court the number of issues posed by the appellant has been reduced to six, and we propose, for the reasons hereinafter apparent, to further reduce the issues that we shall discuss to three.

In 1960 a general zoning plan recommended R-90 zoning for a large area of Howard County. Following the recommendation, affected residents petitioned for change from R-90 to other types of zoning, usually R-40 (residential zoning, but building lots must be at least 40,000 square feet) and R-20. The appellant's property, at that time owned by his father, the late George Dudley Iverson, IV, was in an

---

1. *But see* Section 2.416 of the Howard County Code (Reese & Kane ed. 1972) adopted December 6, 1972, p. 10 *infra.*

R-90 area and no application was made to alter the recommended zoning from R-90 to any other type of residential zoning. Appellee, Phillip Carroll, however, specifically requested that his property, consisting of approximately 2,600 acres, be zoned R-90. When the zoning plan was adopted on May 16, 1961 the property of the appellant, along with that of some of his neighbors, created what appellant characterizes as an "island" consisting of approximately 5,400 acres of R-90 zoning surrounded by R-40 and R-20 zoning. Appellant assigns as a possible reason why his predecessor in title did not seek a change from proposed R-90 to zoning of a greater density, that his father was bedridden with an illness from which he subsequently died in 1961. Appellant further states that the time the plan was considered, he was a regular Army officer on military assignment elsewhere. It may be inferred from the testimony that the father of the appellant failed to petition for a change from R-90 to some other type of zoning because he was unable to do so as a result of his illness. On the other hand, it may also be inferred, just as strongly, that appellant's father, like Mr. Carroll, did not desire zoning of greater density. Both the Carroll's house, known as "Doughoregan Manor", and the Iverson home, known as "Burleigh Manor", have been designated as "historical landmarks". Appellant offered testimony that it was impractical to farm his acreage because of the residential development in the "area". Other testimony was calculated to demonstrate that the 878 homes permissible under the type of rezoning sought would have no adverse effect upon the "area" nor upon traffic. An expert witness in planning, testifying for appellant, informed the Zoning Board that in his view the best possible use of the property was R-20 or R-40 zoning and that there had been substantial changes in the "immediate neighborhood".

## I.

## *MISTAKE*

It is well established in this State that comprehensive zoning or rezoning is presumed to be correct, and the one

who attacks it carries the heavy burden of overcoming the presumption of correctness. *Mayor & Council of Rockville v. Stone,* 271 Md. 655, 319 A. 2d 536 (1974); *Pattey v. Board of Co. Commr's,* 271 Md. 352, 317 A. 2d 142 (1974); *Chevy Chase Village v. Mont. Co.,* 258 Md. 27, 264 A. 2d 861 (1970); *Wells v. Pierpont,* 253 Md. 554, 253 A. 2d 749 (1969); *Smith v. Co. Commr's of Howard Co.,* 252 Md. 280, 249 A. 2d 708 (1969); *Bonnie View Club v. Glass,* 242 Md. 46, 217 A. 2d 647 (1966); *Dill v. The Jobar Corporation,* 242 Md. 16, 217 A. 2d 564 (1966); *Jobar Corp. v. Rodgers Forge,* 236 Md. 106, 202 A. 2d 612 (1964); *Roberts v. Grant,* 20 Md. App. 247, 315 A. 2d 103 (1974).

The evidence presented before the Board was basically directed toward a "change" in the character of the "area" which "change", in appellant's view, mandated that the zoning be modified from R-90 to R-20. We glean from the record that the question of mistake in the original zoning was very much akin to an afterthought because there is little supportive evidence of the existence of a mistake. The Planning Board, in its recommendation to the Zoning Board, did not even discuss the issue of mistake. Its failure to do so, in all probability, is due to the appellant's statement in his application for rezoning that, "at the time of the original zoning of this property it probably was not a mistake to zone it as R-90, however, eleven (11) years have elapsed since the adoption of that Plan and now the [appellant] will be faced with a hardship in that he cannot develop his property to its highest and best use."

The then Howard County Planning Commission, in 1961, recommended in its "general plan" the creation of two R-90 districts for the county, one district in the approximate center of the county and the other in the western portion of the county. As a result of what appellant feels was a plebiscite, and hence illegal, *Montgomery Co. Council v. Scrimgeour,* 211 Md. 306, 313, 127 A. 2d 528, 532 (1956), and *Quinn v. County Commr's,* 20 Md. App. 413, 417, 316 A. 2d 535, 537 (1974), the County Commissioners, in response to objections from the individual property owners in the proposed R-90 area of the western part of the county, altered

the general plan and eliminated R-90 zoning from that portion of the county. Appellant reasoned that the general plan should have been sent back to the Planning Commission for restudy and the submission of new policy advice. The failure to do so, he avers, was a "mistake".

A master or general plan submitted to a body charged with the responsibility of initiating zoning legislation is but a guide or scheme recommended to the legislative branch in order to enable them to make intelligent decisions with respect to the adoption of zoning classifications. *Pattey v. Board of Co. Commr's, supra.* There is, of course, " . . . no requirement that the comprehensive plan adopted by the legislative body must conform to the recommendations of the Master [or general] Plan. . . ." *Nottingham Village v. Balto. Co.*, 266 Md. 339, 354, 292 A. 2d 680, 687 (1972). We know of no reason why the Planning Commission should be required to reconsider its general or master plan because of the legislative body's rejection of a portion of it. When the County Commissioners adopted the comprehensive plan, with amendments to the original general or master plan, the adopted comprehensive plan becomes *the plan* under which zoning is thereafter regulated.

The then County Commissioners of Howard County were vested with authority, under the provisions of the Code of Public Local Laws of Howard County (1957), § 233, to promote:

"(a) . . . health, safety, morals and general welfare, to alleviate traffic congestion, to facilitate the safe flow of traffic, to protect highways from the encroachment of advertising structures and buildings, to preserve the scenic beauty of Howard County and to promote the orderly growth of said County in the interest of all its inhabitants, the County Commissioners of Howard County are hereby empowered to designate, regulate and control Zoning Districts within the bounds of said County, regulate the use, height, area, bulk and type of construction of buildings and the use of

land. *Such regulations shall be made in accordance with a master or comprehensive plan.*

(b) The County Commissioners of Howard County may designate within the County certain Districts of such number, shape and area as may be deemed best suited to carry out the purposes of this sub-title, and within such districts they may, by appropriate regulations, restrict, control, limit and regulate the erection, alteration, repair and use of buildings and the use of land and regulate and control the number of families which may be housed on any lot and in any building. All such regulations shall be uniform for each class or kind of building or structure or use throughout each District, but the regulations in one District may differ from those in other Districts." (Emphasis supplied).

In order to fulfill the duty imposed upon them by § 233, it was necessary for the County Commissioners to adopt a comprehensive or master plan. The authority to adopt the master or comprehensive plan was conferred upon the County Commissioners not the Planning Commission.

The evidence produced by appellant to demonstrate "mistake" in the adoption of the original comprehensive zoning plan fell well short of meeting the "heavy burden" required by *Jobar Corp. v. Rodgers Forge, supra,* and its siblings.

" ... The opinion of an expert that there was error in the original zoning or comprehensive rezoning is not evidence substantial or strong enough to support a finding of original error unless the reasons given by the expert as the basis of his opinion, or other supporting facts relied on by him, are in themselves substantial and strong enough to do so." *Dill v. The Jobar Corporation, supra* at 23.

It is patent that the Howard County Zoning Board did not find that appellant's evidence met the measure of being "substantial and strong enough" to show original error. Our

review of the record fails to convince us that the Board was wrong.

## II.

### CHANGE

Appellees assert that appellant has failed to delineate the neighborhood in which the alleged changes are said to have occurred, and, therefore, the decision of the Board should be affirmed. In *Pattey v. Board of Co. Commr's, supra,* Judge Levine, speaking for the Court of Appeals, said at 361-362:

"An effective argument made by appellants, in urging reversal, is that rezoning cannot be sustained on the basis of a 'change' in the character of the neighborhood if for no other reason than the applicant's failure to delineate the neighborhood in which it claims the substantial change occurred. *Rockville v. Henley* [268 Md. 469, 302 A. 2d 45 (1973)] at 473; *Mont. Co. v. Nat'l Capital Realty,* 267 Md. 364, 376, 297 A. 2d 675 (1972); *Border v. Grooms,* 267 Md. 100, 110, 297 A. 2d 81 (1972). We said in *Border v. Grooms:*

'  . . . As the cited cases indicate, *that which reasonably constitutes the neighborhood of the subject property is one of the basic facts to be established by an applicant for rezoning,* and because of its fundamental involvement in any case resting on a contention of a change in the character of the neighborhood it must be satisfactorily shown upon the record. . . .' 267 Md. at 110." (Emphasis supplied).

In the instant case, we have carefully searched the record, but we are unable to find any serious attempt on the part of appellant to define the neighborhood of the subject property. There are, to be sure, references to the "area", and to the "immediate neighborhood", but nowhere in the 197 pages of testimony has anyone said what they meant when they used

the terms "area" and "immediate neighborhood". It is patent that "area" is an all inclusive word that could just as easily mean the entire county as it could mean a contiguous parcel of land. What is meant by "immediate neighborhood" is equally vague. It is, otherwise undefined, like beauty, " . . . altogether in the eyes of the beholder." [2] Furthermore, the Board made no finding of fact as to what constituted the neighborhood of the subject property.

We hold that the appellant's failure to delineate the neighborhood in and of itself requires an affirmance of the judgment of the Circuit Court. *Pattey v. Board of Co. Commr's, supra.*

In view of our holdings herein that appellant failed to demonstrate "mistake" or to delineate the "neighborhood", it is unnecessary for us to discuss the appellant's other contentions as they relate, in part, to both of the aforegoing issues. We would be remiss, however, if we did not, for the guidance of the trial court, comment upon the Board's failure to comply with the procedural requirements of the Howard County Code. Section 2.416 of the Howard County Code (Reese & Kane ed. 1972) provides:

"The decision to grant or to deny a petition to amend the Zoning Regulations or the Zoning District boundaries shall be by vote, and the vote of each member of the Zoning Board shall be recorded and made a part of the record of the case. The Final Order of the Zoning Board shall be in writing, signed by a majority of the members of the Zoning Board, attested by the Secretary and shall be accompanied by findings of fact and conclusions of law. Any member of the Zoning Board may file a dissent from the majority opinion which shall be attested by the Secretary. The majority opinion and dissenting opinions shall be made a part of record of proceedings and shall be filed with the Zoning Enforcement Officer and maintained by him as

---

2. *Lewis Wallace, The Prince of India,* bk. III, ch. 6 (1893).

part of the official records of the County. Each case shall be decided and the final Decision and Order shall be issued not later than thirty (30) days after the end of the Hearing, unless cause to the contrary be shown. The Board may, upon its own Motion and with reasons therefor, extend the time of final Decision for a period not exceeding ninety (90) days from the end of the Hearing date.

Upon receipt of the Board's Final Decision and Order in any case, the Zoning Enforcement Officer shall cause copies thereof to be made and mailed to the Petitioner and distributed to Representatives of the News Media and to any person desiring a copy thereof."

When, as here, the Board does not follow the Code, the trial court should ordinarily remand the matter to the Board with instructions that the Board comply with Section 2.416. Where, as here, the applicant has failed to delineate the neighborhood, a remand to correct mere procedural error would be pointless. We further observe that the Board's failure to comply with the time provisions of Section 2.416 does not operate as an approval of the rezoning application.

*Judgment affirmed; costs to be paid by appellant.*