JOHN J. STONES ET AL., APPELLANTS, v. PLATTSMOUTH, NEBRASKA, AIRPORT AUTHORITY, A GOVERNMENTAL SUBDIVISION, ET AL., APPELLEES.

228 N. W. 2d 129

Filed April 17, 1975. No. 39654.

Blevens, Bartu, Blevens & Jacobs, for appellants.

Herbert J. Elworth, Francis M. Casey, and James F. Begley, for appellees.

Heard before WHITE, C. J., BOSLAUGH, NEWTON, CLINTON, and BRODKEY, JJ., HASTINGS, District Judge, and KUNS, Retired District Judge.

BOSLAUGH, J.

This case arises out of a controversy concerning the construction of an airport by the Airport Authority of the City of Plattsmouth, Nebraska.

The plaintiffs owned a half section of land near Plattsmouth, Nebraska, upon which a part of the airport was to be constructed. This action was commenced to enjoin the airport authority and the other defendants from proceeding with the airport project. The trial court found generally for the defendants and dismissed the action. The plaintiffs have appealed.

The plaintiffs' contentions may be grouped into three categories. The first category relates to the selection of the site for the Plattsmouth airport. The substance of this contention is the plaintiffs were entitled to notice and an opportunity to be heard before their property was selected as a part of the site for the Plattsmouth airport.

It is the duty of the Nebraska Aeronautics Commission to designate the locations and sites of airports in

this state. § 3-104, R. R. S. 1943. The meetings of the commission are open to the public but there is no formal requirement of notice and an opportunity to be heard in such matters that would apply to the plaintiffs.

The selection of a site for a public improvement is an exercise of a power which is legislative in nature and the requirements of due process that apply to judicial or quasi-judicial proceedings are not applicable. The matter before the Nebraska Aeronautics Commission in this case was not a "contested case" within the meaning of section 84-901 (3), R. R. S. 1943, so far as the plaintiffs were concerned.

The plaintiffs also contend there was no compliance with the Airport and Airway Improvement Act of 1970 which requires an "opportunity" for public hearings for the purpose of considering the economic, social, and environmental effects of the airport location before the project may be approved for federal participation. See 49 U. S. C. A., § 1716 (d) (1). The record indicates a notice of an opportunity for public hearing was published in a local newspaper on August 24, 1970. It is unnecessary to consider whether there was compliance with the federal act because, at the most, it would affect only federal participation in the project.

The second category relates to the zoning of the property. The plaintiffs complain that the comprehensive development plan for Cass County, dated September 1968, showed a proposed location for the airport which was north and west of the plaintiffs' land. A comprehensive development plan is merely a policy statement that may be implemented by a zoning resolution. § 23-114.01 (2), R. R. S. 1943. It is the zoning resolution which has the force of law. § 23-114, R. R. S. 1943.

A comprehensive plan is a guide to community development rather than an instrument of land-use control. See 3 Anderson, American Law of Zoning, § 17.15, p. 307. If there is a conflict between a comprehensive plan and a zoning ordinance, the zoning ordinance contains

the controlling provisions when questions of a citizen's property rights are at issue. George Calantoni & Sons, Inc. v. Board of Supervisors, 6 Pa. C. 521, 297 A. 2d 164. See, also, Cochran v. Planning Board of Summit, 87 N. J. Super. 526, 210 A. 2d 99.

So far as the zoning regulation or ordinance of Cass County is concerned, the record shows the plaintiffs' land was zoned, "A" rural and public use district. A publicly owned and operated property is a permitted use in such a district. On two occasions the county board advised the airport authority that the use of the land for the purposes of an airport would not conflict with the zoning regulations. A certificate of occupancy was issued to the airport authority on October 2, 1973. The record establishes the construction of the airport on the plaintiffs' property violated no zoning regulation.

The third category relates to the right or power of the city to condemn the plaintiff's land for airport purposes. The plaintiffs contend an excess of land was condemned and the condemnation was not for a public use. The plaintiffs base this contention upon the minimum land requirements for utility airports established by the Federal Aviation Administration and the fact that approximately 150 acres of the property condemned has been leased for agricultural purposes.

The defendants' evidence established that the area condemned was necessary for the present and future development of the airport. The main runway will be lengthened, a cross-wind runway will be constructed, and additional structures will be added as necessary.

An airport authority has broad powers to include all facilities necessary or convenient in constructing an airport project. § 3-504, R. R. S. 1943. There was no evidence of fraud or bad faith in the determination of the amount of land necessary for the project.

The agricultural lease of the property which is not otherwise required for use at this time is authorized by statute. § 3-504, R. R. S. 1943. See Bowley v. City of

Omaha, 181 Neb. 515, 149 N. W. 2d 417. The lease is subject to reduction in acreage as needed and serves the purpose of maintenance and erosion control as well as providing revenue to the authority.

An additional ground presented in the District Court has been waived upon this appeal. The plaintiffs contended there had been no good faith negotiation by the city prior to the filing of proceedings in eminent domain. Although this issue should have been raised in the condemnation case, it has been litigated and determined adversely to the plaintiffs and can not be relitigated in the condemnation case.

Some mention should be made of the other similar actions which were commenced by the plaintiffs but then dismissed prior to trial. In view of the conclusion which we have reached in this case it is unnecessary to discuss the other proceedings other than to note that it appears there may have been an abuse of the judicial process in one or more of those actions. The plaintiffs were entitled to an adjudication of their rights, but a proliferation of actions in which the same issues are raised is not a proper method of procedure and will not be tolerated.

The judgment of the District Court is affirmed.

AFFIRMED.