GEORGE G. S. HOLMGREN ET AL., APPELLANTS, V. CITY OF LINCOLN, A MUNICIPAL CORPORATION, ET AL., APPELLEES, DAVID C. PIERSON, TRUSTEE, INTERVENER-APPELLEE.

256 N. W. 2d 686

Filed August 10, 1977.  No. 41096.

Duane L. Nelson, for appellants.

Charles D. Humble and Helga L. Kirst, for appellees.

Paul L. Douglas, Attorney General, and Chauncey C. Sheldon, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

This is an action to have ordinance No. 10634, an amendment to the general zoning ordinances of the City of Lincoln, declared null and void.  The District Court denied relief and the plaintiffs have appealed. We affirm.

The amendatory ordinance here at issue changed the zoning classification of a 4.6-acre tract from Class A-2, single family dwelling district, to Class C, multiple dwelling district. This change would permit the construction of multiple dwellings and row houses, in addition to single and two-family dwellings permitted in higher zoning classifications. The land in question is part of a larger tract, vacant except for some isolated dwellings, and is not in single ownership. The plaintiffs reside on adjacent property which is zoned Class A-2.

The claim of the plaintiffs that the ordinance is void rests on the following premises: (1) The amendment is not "in accordance with a comprehensive plan" as required by section 15-902, R. R. S. 1943. (2) The ordinance is arbitrary and unreasonable because it results in "spot zoning," and is therefore unconstitutional.

Section 15-902, R. R. S. 1943, is the enabling legislation which authorizes cities of the primary class to adopt zoning regulations. In addition to describing generally the powers granted, it recites: "Such zoning regulations shall be designed to secure safety from fire, flood and other dangers and to promote the public health, safety and general welfare, and shall be made with consideration having been given to the character of the various parts of the area zoned and their peculiar suitability for particular uses and types of development, and with a view to conserving property values and encouraging the most appropriate use of land throughout the area zoned, in accordance with a comprehensive plan." The enabling statute was first enacted in 1929. The phrase, "in accordance with a comprehensive plan," was added by an amendment in 1963.

The plaintiffs contend that the comprehensive plan to which the zoning laws must conform was adopted by the Lincoln City-Lancaster County Planning and Zoning Commission on April 12, 1961, and subse-

quently approved by the city council of Lincoln. That comprehensive plan includes all aspects of city and regional planning, embracing, among other things, forecasts as to future population and economic conditions, transportation needs, and proposals for utilities. It also includes a "land use" or zoning section, part of which consists of a zoning map in which the tract which is the subject of this action is proposed as part of a single-family residence area. Part of the tract and adjacent property are also considered by the plan as a future site for a public park. The record indicates that this latter use was ultimately rejected by a refusal of the city council of Lincoln to make the necessary capital expenditures.

The comprehensive plan was adopted by the City of Lincoln pursuant to the provisions of sections 15-1101 et seq., R. R. S. 1943, and enacted by the Legislature in 1959. Section 15-1102, R. R. S. 1943, provides: "The general plan for the improvement and development of the city of the primary class shall be known as the comprehensive plan." It then provides that the plan shall include six items separately numbered and described, and then goes on to say: "The comprehensive plan shall include a land-use plan showing *the proposed general distribution and general location* of business and industry, *residential areas, utilities,* and recreational, educational, and other categories of public and private land uses. The land-use plan shall also show *the recommended standards of population density based upon population estimates* and providing for activities for which space should be supplied within the area covered by the plan." (Emphasis supplied).

Section 15-1105, R. R. S. 1943, gives to the planning director the responsibility of preparing "the zoning ordinance" and of "submitting it to the city planning commission." The statute provides that when approved by the commission, it is submitted to the

council for its consideration, and the zoning ordinance shall become effective when adopted by the council. It also provides: "The city council of such primary city may amend, supplement, or otherwise modify the zoning ordinance." The statute requires that before amendment such proposal be submitted to the planning commission for *a recommendation* and report. Provisions for hearing and notice are also contained in the statute.

In essence, the plaintiffs contend that the single-family designation in the plan fixes the use of the property, and therefore, the "in accordance with" provision of the enabling statute is violated and the amendment therefore void. In support of their position the plaintiffs rely primarily upon the opinion of this court in Weber v. City of Grand Island, 165 Neb. 827, 87 N. W. 2d 575, where we had occasion to consider the validity of an amendatory zoning ordinance enacted under the provisions of Chapter 19, article 9, R. R. S. 1943. Section 19-901, R. R. S. 1943, requires the adoption of a comprehensive plan, among other things, as a condition precedent to the exercise of the zoning power by the city. That statute provides in part: "The comprehensive development plan shall be used only as a guide by the planning commission and the municipal legislative body in all matters to which such comprehensive plan applies." The original version of this section was enacted in 1927. While the last-quoted sentence was part of a 1974 amendment, the simple provision, "in accordance with a comprehensive plan," has been included in Chapter 19, article 9, R. R. S. 1943, since the original enactment. The provision requiring the appointment of a planning commission and a recommended comprehensive development plan as a condition precedent was added later, but before the ordinance being considered in the Weber case was enacted. The county zoning enabling act contains a similar condition precedent provision. § 23-114.03,

R. R. S. 1943. Chapter 15, article 9, R. R. S. 1943, contains no express provision making the adoption of "the comprehensive plan" a condition precedent to the exercise of the zoning power.

In Weber, the zoning amendment involved the change of a half block of a residential zone to a commercial classification for the purpose of permitting the construction and operation of a supermarket. We held, among other things, that the amendment constituted arbitrary spot zoning, saying: " . . . there is no competent evidence from which it could be concluded that the action of the board of adjustment permitted the rezoning, or that ordinance No. 3263 was passed for the purpose of promoting the health, safety, morals, or general welfare of the community, in compliance with section 19-901, R. R. S. 1943. The evidence is conclusive that such action and ordinance did not do so." We there noted that the evidence clearly established that the board of adjustment and the council acted in violation of the enabling statutes by spot zoning the property involved, in an arbitrary, unreasonable, discriminatory, and illegal manner for the benefit of one individual to the detriment of the plaintiffs and other owners of property affected. We also said that there *had been no attempt to establish a comprehensive plan* for the area involved. However, in that case we had no occasion to determine what the words "in accordance with a comprehensive plan" meant, that is, whether such a plan is merely a guide, or whether it is something which sets future zoning in concrete until the plan itself is changed. It does not seem to us that the Weber case affords a precedent in this case.

The zoning enabling statutes of many states contain provisions requiring that zoning be accomplished in accordance with "a comprehensive plan." Usually the term was not defined by statute and the courts reached a variety of conclusions as to what

the term meant. See, Haar, "In Accordance With a Comprehensive Plan," 68 Harv. L. Rev., p. 1154; Hagman, Urban Planning & Development Control Law, § 93 et seq., pp. 168 to 178.

An examination of the pertinent language of section 15-1102, R. R. S. 1943, convinces us that the plan was intended to be a general guide. It refers to "general distribution and general location of business and industry, residential areas, utilities, and recreational, educational, and other categories of public and private land uses," as well as to "the recommended standards of population density based upon population estimates." This language clearly leads to the conclusion that "the" or "a" comprehensive plan is the guide. We recently had occasion, in a somewhat different context, to say that such a comprehensive plan is a guide. See Stones v. Plattsmouth Airport Authority, 193 Neb. 552, 228 N. W. 2d 129, where we said: "A comprehensive plan is a guide to community development rather than an instrument of land-use control. See 3 Anderson, American Law of Zoning, § 17.15, p. 307." In Haar, op. cit., p. 1174, it is said: ". . . when plans are conceived to deal in more specific terms they generally focus on the wrong kind of detail, emphasizing maps and diagrams, precise locations and sites, and other details more appropriate for the later stages of implementation and execution. Such an approach makes the master plan in effect a preliminary, sketchy, first-draft zoning ordinance. This overconcern with detail causes the vaunted general perspective of the master plan to expose itself as nothing more than the limited knowledge available at the first stages of survey and analysis; and the zoning ordinance, dealing as it does with concrete cases and problems, becomes a later, matured evaluation. It is only as a series of statements and precepts, representing community choice and decision as to the space needs of various activities and

the interrelationships of land uses, that the master plan can effectively fulfill its role as a guide to regulatory action.''

The evidence in this case does not support the conclusion that the amendatory ordinance is not in accordance with ''a comprehensive plan.'' The use designated by the amendment is residential, as called for by the plan, although the amendment permits a higher population concentration. This is not a case where a use entirely different from that contemplated by the plan results. In Bucholz v. City of Omaha, 174 Neb. 862, 120 N. W. 2d 270, we said: ''Where the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control.'' The following authorities under similar statutes support the specific conclusion here reached: Borough of Cresskill v. Borough of Dumont, 15 N. J. 238, 104 A. 2d 441; Village 2 at New Hope, Inc. Appeals, 429 Pa. 626, 241 A. 2d 81. We conclude that ordinance No. 10634 did not violate the term of the enabling legislation which mandates that zoning be ''in accordance with a comprehensive plan.''

We now turn to the claim that the classification change of the 4.6-acre tract constituted arbitrary and capricious and therefore unconstitutional spot zoning.

In Weber v. City of Grand Island, *supra,* we said that spot zoning has been generally defined as the singling out of a small parcel of land for a use or uses classified differently from the surrounding area, primarily for the benefit of the owner of the property so zoned, to the detriment of the area and the other owners therein. As previously noted, that case involved the rezoning of a one-half block area in the midst of what was otherwise a residential area. We said: ''The validity of spot zoning depends upon more than the size of the spot, and spot zoning as such is not necessarily invalid, but its validity de-

pends upon the facts and circumstances appearing in each particular case." Hagman, op. cit., § 93, p. 169, analyzes spot zoning in the following fashion: "Spot zoning is invalid where some or all of the following factors are present:

"1. a small parcel of land is singled out for special and privileged treatment;

"2. the singling out is not in the public interest but only for the benefit of the landowner;

"3. the action is not in accord with a comprehensive plan.

"The list is not meant to suggest that the three tests are mutually exclusive. If spot zoning is invalid, usually all three elements are present, or, said another way, the three statements may merely be nuances of one another."

We regard the following factors as significant in this case in determining whether the change of zoning of the 4.6-acre tract is arbitrary and unreasonable spot zoning and hold that they do support the council's action. (1) The tract itself and the land to the east and west is largely vacant. (2) The change from the original proposed uses is not radical, that is, it is from one type of residential use to another type of residential use. (3) There is conflicting expert testimony as to whether the zone change is in the public interest. (4) There is competent, conflicting evidence to the effect that the tract of which the area in question is a part, does not, because of natural and man-made boundaries lend itself to extensive single-family development. (5) The land in question and the larger vacant tracts of which it is a part are in diverse ownership and this fact supports the conclusion that the rezoning was not for the special benefit of one single landowner to the detriment of the others. We have said: "What is the public good as it relates to zoning ordinances affecting the use of property is primarily a matter lying within the discretion and determination of the municipal

body to which the power and function is committed; and unless an abuse of discretion has been clearly shown, it is not the province of the court to interfere." Crane v. Board of County Commissioners, 175 Neb. 568, 122 N. W. 2d 520.

The determination of the District Court that the ordinance was not unconstitutional spot zoning is correct.

AFFIRMED.