NEWT COPPLE, APPELLANT, V. THE CITY OF LINCOLN,
A MUNICIPAL CORPORATION, ET AL., APPELLEES.

274 N. W. 2d 520

Filed January 24, 1979.   No. 41649

Knudsen, Berkheimer, Endacott & Beam, for appellant.

Charles D. Humble, Lincoln City Attorney, and William G. Blake, for appellees.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

Plaintiff-appellant, Copple, appeals to this court from the denial by the Lancaster County District Court of his petition for a permanent injunction, enjoining the defendants-appellees from using the Lincoln City-Lancaster County Comprehensive Regional Plan purportedly adopted on January 25, 1977, and from rezoning certain property for shopping center use. We affirm.

The plaintiff, Copple, is the owner of land located at the southwest corner of Old Cheney Road and 40th Street in Lincoln, Nebraska. Copple filed a petition with the Lincoln city council on September 15, 1976, to have his property rezoned from A-1, residential zoning district usage, to J-1, planned regional commercial district usage.

Also on file with the Lincoln city council is the petition of John F. O'Neill, one of the partners of Steve E. Cook, a Lincoln city councilman, to have land owned by the partnership and located at the northeast corner of 27th Street and proposed Pine Lake Road, in Lincoln, Nebraska, rezoned J-1, planned regional commercial district usage, from its present zoning classification of A-1, residential zoning district usage.

Both the Cook property and plaintiff's property are located in the same section of land but are a considerable distance apart. The owners are vying for

the designation of their respective properties as a regional multiuse center for the southern portion of Lincoln, Nebraska, suitable for shopping center development.

By November 15, 1976, the city council had voted to place both petitions for rezoning, Copple's and Cook's, on a pending status for further action after the comprehensive plan had been recommended to and adopted by both the Lincoln city council and Lancaster board of county commissioners.

On January 25, 1977, the city planning commission, pursuant to statute, submitted a proposed comprehensive plan to the Lincoln city council, and Lancaster board of county commissioners for adoption. The city council and board of county commissioners met separately, and each adopted the proposed comprehensive plan on January 25, 1977. The comprehensive plan, as adopted, designated as a site for a regional multiuse center an area encompassing the Cook property. It was stipulated that the designation in the comprehensive plan of the Cook property as the site for a regional multiuse center would be considered by city councilmen Denny, Baker, Bailey, Jeambey, and Sikyta as a favorable factor in their final decision of whether to approve Cook's petition for rezoning.

Copple makes essentially three assignments of error on the part of the District Court in denying his request for a permanent injunction to prevent the defendants, City of Lincoln and the city council members, from using the comprehensive plan as adopted on January 25, 1977, and from rezoning Cook's property to J-1, planned regional commercial district usage. Plaintiff's first assignment of error is that the Lancaster County board of commissioners made its decision to adopt the comprehensive plan on January 25, 1977, in violation of Nebraska's open meeting laws. Plaintiff's second assignment of error is that the Lincoln city council acted arbitrar-

ily and capriciously in adopting the comprehensive plan designating Cook's property as the site for a regional multiuse center. His third assignment of error is that the comprehensive plan should be found to be void on public policy grounds because of councilman Cook's alleged conflict of interest and his continued participation and voting in the preparation and adoption of the plan.

Plaintiff's first assignment of error concerns itself with the actions of the Lancaster County board of commissioners on January 25, 1977, when the plan was adopted by the county board. The record discloses that the city council and county board were gathered to discuss, and possibly adopt, the proposed plan. Robert Colin, one of the three Lancaster County commissioners, moved during the meeting of the county board that "approval of the comprehensive plan be delayed for ninety days until a further study could be made of the shopping center issue." The motion carried by a vote of two to one. Commissioner Colin then moved that the county board recess and reconvene after the city council had a chance to act upon the actions taken by the county board. The city council convened, adopted the comprehensive plan, and recessed, at which time the county board reconvened. A motion was then made to have the county board adopt the proposed comprehensive plan, but the motion failed. Thereafter, a motion to recess again for 10 minutes was made and passed. The county board then moved from the city council chambers, where the county board was meeting, to an adjoining office. Present at that time were the planning commission director, a representative of the consulting firm, a Lancaster County deputy county attorney, the three county board commissioners, a representative of the news media, and a number of other people who were already in the office or who came in with the county board. The door to the office remained open at all

times and no one was excluded or asked to leave the room. No votes of any kind were taken during the recess. The deputy county attorney advised the county board that they had no jurisdiction over the shopping center issue, as it was within the City of Lincoln's 3-mile limit. When the county board thereafter reconvened its meeting in the city council chambers, commissioner Hamilton made a statement regarding the shopping center, and then voted in favor of the motion to adopt the proposed plan. The comprehensive plan was adopted by a two to one vote.

Plaintiff's contention is that the meeting during the recess was a violation of Nebraska's open meeting laws, sections 84-1408 to 84-1414, R. R. S. 1943. Section 84-1411 (1) reads as follows: "Each public body shall give reasonable advance publicized notice of the time and place of each meeting by a method designated by each public body and recorded in its minutes. Such notice shall be transmitted to all members of the public body and to the public. Such notice shall contain an agenda of subjects known at the time of the publicized notice, or a statement that the agenda, which shall be kept continually current, shall be available for public inspection at the principal office of the public body during normal business hours. The public body shall have the right to modify the agenda to include items of an emergency nature only at such public meeting." Copple argues that the recess of the county board was a meeting which was in violation of section 84-1411 (1); and thus voided the county board's subsequent two to one vote to adopt the proposed comprehensive plan, taken when the meeting reconvened, by virtue of section 84-1414 (1), R. R. S. 1943, which reads as follows: "Any motion, resolution, rule, regulation, ordinance or formal action of a public body made or taken in violation of any of the provisions of sections 79-327, 84-1408, 84-1413, and 85-104 shall be declared

void by the district court. A suit to void any final action shall be commenced within one year of the action." We deem that argument to be without merit.

It is clear from the evidence that no vote was taken upon "any motion, resolution, rule, regulation, ordinance or formal action" which would be void under section 84-1414 (1), R. R. S. 1943, and that no violation of the Nebraska open meeting laws took place during the recess.

An underlying assumption inherent in plaintiff's first assignment of error is that the legal adoption of the plan by the county board was necessary, in conjunction with the adoption of the plan by the city council, before the City could use the plan. We need not reach that issue in view of our conclusion that there was no violation of the open meeting laws by the Lancaster County board of commissioners.

Plaintiff's second assignment of error is that the Lincoln city council acted arbitrarily and capriciously by adopting the comprehensive plan, which designates the location of Cook's property as the site for a regional multiuse center.

In the case of City of Omaha v. Glissmann, 151 Neb. 895, 39 N. W. 2d 828 (1949), we stated that: "[C]ourts will presume that the legislative body, in enacting ordinances, acted within their authority, and the burden rests upon those who challenge their validity to show that, in the matter called in question, the action of the municipal authorities was arbitrary, unreasonable, and without substantial relation to the public safety, health, morals, or the general welfare."

The statute dealing with comprehensive plans for cities, in effect during the development and adoption of Lincoln's comprehensive plan, was section 15-1102, R. R. S. 1943. That section in part provides that, "The *general plan* for the improvement and development of the city of the primary class shall be known

as the comprehensive plan." (Emphasis supplied.) This court in Kelley v. John, 162 Neb. 319, 75 N. W. 2d 713 (1956), ruled that a city ordinance adopting a comprehensive plan was a legislative act, and not an administrative act. We are of the opinion that the Lincoln city council, in adopting the comprehensive plan, acted legislatively. The comprehensive plan, as adopted by the City of Lincoln, itself recognizes it is only to serve as a general guide in the development of Lincoln and Lancaster County. While the comprehensive plan specifically refers to the location of Cook's property as a site for a regional multi-use shopping center, it does not necessarily follow that Cook's property will, in fact, be developed as the regional shopping center. The Lincoln City-Lancaster County Comprehensive Regional Plan states: "It should be noted that while six multi-use centers are *proposed*, all of the outlying centers are considered subservient to Lincoln Center — the commercial focus of the region. The conclusion is clearly outlined in the adopted goals and policies and supports the concept of resource conservation. As a result, the staging and size of outlying regional centers has been developed to assure continued dominance of the downtown. Moreover, it is the policy and [sic] the City of Lincoln and County of Lancaster to control the disposition of regional shopping center locations and sizes through regulatory controls. Should the *proposed recommendations* for such centers appear to underserve local needs while having no impact upon the downtown, the recommended size limits and staging might be altered. Conversely, should the development of the *proposed centers* result in adverse impacts upon the downtown further restrictive measures should be instituted." (Emphasis supplied.)

In an effort to meet his burden of proof that the adoption of the comprehensive plan by the Lincoln city council was "arbitrary, unreasonable and with-

out substantial relation to the public safety, health, morals, or the general welfare," plaintiff called several expert witnesses who testified solely as to the location of the regional shopping center in south Lincoln and the need for opening Pine Lake Road if Cook's property was to be the site for the center.

Evidence in the record discloses a great deal of time and money was expended in the development of the proposed comprehensive plan. During its development plaintiff's experts prepared and presented an analysis to the planning commission regarding the relative merits of the two properties being considered for designation as the site for the south regional shopping center.

The defendants' brief fairly summarizes, we believe, the evidence before us as follows: "The considerations which went into the designation of the potential shopping center site not only involved the economic feasibility of a number of proposals, but also included economic impact on existing commercial areas, impact upon existing and planned residential areas, and impact upon utilities, drainage and transportation * * *. While economic information was gleaned through a national consultant and updated when necessary, the City of Lincoln analyzed the situation in light of the goals of avoiding community splitting, avoiding the adverse effects a shopping center could have on already existing surrounding land use patterns in neighborhoods, diverting excess traffic from potentially overloaded streets, preserving existing shopping areas, and achieving proper timing.

"In short, the planners for the City of Lincoln developed a comprehensive plan as a total unit, based upon overall planning policies and objectives. This thorough approach to planning can hardly be labeled as arbitrary and capricious planning."

The District Court properly found that plaintiff failed to establish that the City of Lincoln acted arbi-

trarily or capriciously in adopting the comprehensive plan.

Plaintiff's third assignment of error is that city councilman Cook participated in the development of the proposed comprehensive plan and voted to adopt it, when he had a conflict of interest because of his having an ownership interest in property designated in the plan as a site for a regional shopping center.

Defendants and the trial court rely upon Angle v. Chicago, 151 U. S. 1, 14 S. Ct. 240, 38 L. Ed. 55 (1894), and Schauer v. City of Miami Beach, 112 So. 2d 838 (Fla., 1959), for the proposition that under the doctrine of separation of powers, courts should not inquire into the motives of legislators whenever an adopted ordinance is legislative in character. However, as pointed out by plaintiff, the Florida District Court of Appeals stated in City of Miami Beach v. Schauer, 104 So. 2d 129 (Fla. App., 1958), which was the case affirmed in Schauer v. City of Miami Beach, *supra,* that, "disqualification of a member of the city council would have to be provided for by legislation. * * * In the absence of some such provision, applicable to the city council of the City of Miami Beach, the vote in question must stand." Subsequently, the Florida District Court of Appeals in Fossey v. Dade County, 123 So. 2d 755 (1969), distinguished its prior holding in City of Miami Beach v. Schauer, *supra.* Fossey v. Dade County, *supra*, involved a county commissioner, Fossey, who sought to reverse a declaratory decree by a lower court that he was not qualified to vote upon a resolution which would substantially increase the value of some land which he owned. The county operated under a home rule charter, one section of which provided in part that "[a]ny county official or employee of the county who has a financial interest, direct or indirect, in any action by the Board shall make known that interest and shall refrain from vot-

ing upon or otherwise participating in such transaction." The court in Fossey continued: "We have not overlooked City of Miami Beach v. Schauer, * * *. The Schauer decision is not contrary to the holding in the instant case, because in the Schauer case there was no statute or charter provision precluding the councilman from voting. The question of the right of County Commissioner Fossey to vote on the proposition involved in the instant case was simplified by the presence of § 4.03 (E) of the county's home rule charter, as a result of which it became necessary only to determine whether the charter provision was applicable in this instance, that is, whether Commissioner Fossey 'has a special financial interest, direct or indirect, *in any action by the Board.*' " (Emphasis supplied by the court.) See, also, Coffin v. City of Lee's Summit, 357 S. W. 2d 211 (Mo. Ct. App., 1962).

At all times material to this case, the City of Lincoln had in effect ordinances dealing with conflicts of interest on the part of city officials. The provisions of the Lincoln Municipal Code in effect during the period when the comprehensive plan was developed and adopted were sections 2.08.010 to 2.08.030 and sections 2.09.010 to 2.09.050, which we quote, in pertinent part, below: "2.08.010 *Interest to be declared — Member not to participate.* If any councilman, the mayor, or any employee of the city has a significant financial interest, direct or indirect, or by reason of ownership of stock in any contract or other business dealings with the city, or in any action of the city government relating to the public or private development of land, or if any member of any city board or commission has a significant financial interest, direct or indirect, or by reason of ownership of stock, in any matter before the body on which he serves, he shall declare that interest and shall refrain from voting upon or otherwise participating in the making of the contract or the taking of

the action in which he has a financial interest. (Ord. 6899 § 1; April 13, 1959). 2.08.020 *Form of declaration.* If any person described in section 2.08.010 hereof has any interest as specified in said section, he shall declare his interest by filing a sworn statement with the city clerk which statement should contain the following: (a) The position held with the city by such person; and (b) The nature of his interest. (Ord. 6899 § 2; April 13, 1959). 2.08.030 *Penalty for concealing interest.* Any officer or employee designated in section 2.08.010 hereof or in Article VII, Section 3 of the City Charter, who willfully conceals his interest or willfully conceals the requirements of Article VII, Section 3 of said chapter, or who violates the provisions of this chapter shall forfeit his office or position and shall be deemed guilty of a misdemeanor; and upon conviction thereof shall be fined in any sum not exceeding $100 or shall be imprisoned in the city jail for not to exceed six months, and shall stand committed to the city jail until such fine and costs of prosecution are paid. (Ord. 6899 § 3; April 13, 1959). 2.09.010 *Title.* This chapter may be known, referred to, and cited as the code of ethics of the City of Lincoln. (Ord. 9145 § 1; January 3, 1967). 2.09.020 *Declaration of Policy.* The public judges its government by the way public officials and employees conduct themselves in the posts to which they are elected or appointed. The people have a right to expect that every public official and employee will conduct himself in a manner that will tend to preserve public confidence in and respect for the government he represents. Such confidence and respect can best be promoted if every public official and employee, whether paid or unpaid, and whether elected or appointed, will uniformly: (a) Treat all citizens with courtesy, impartiality, fairness, and equality under the law; and (b) Avoid both actual and potential conflicts between their private self-interest and the public interest. To help public of-

ficials and employees achieve these goals is one of the objectives of this code. The other objective is based on the proposition that no man can serve two masters, nor should he attempt to do so. Therefore, this code provides for the prohibition of such type of service. The provisions of chapter 2.09 are intended to be in addition to the requirements contained in chapter 2.08 (Ord. 9145 § 2; January 3, 1967). 2.09.030 *Definitions.* The terms used in this code are hereby defined as follows: (a) Official or employee. Any person elected or appointed to, or employed or retained by, any public office or public body of the city, whether paid or unpaid and whether part-time or full time. (b) Public body. Any agency, board, body, commission, committee, department or office of the City of Lincoln. (c) Financial interest. Any interest which shall yield directly or indirectly a monetary or other material benefit (other than the duly authorized salary or compensation for his services to the city) to the official or employee or to any person employing or retaining the services of the official or employee. (d) Personal interest. Any interest arising from blood or marriage relationships or from close business or political association whether or not any financial interest is involved. (e) Person. Any person, firm, association, group, partnership, or corporation, or any combination thereof. (Ord. 9145 § 3; January 3, 1967). 2.09.040 *Fair and equal treatment.* * * * 2.09.050. *Conflict of interest.* Financial or personal interest. No official or employee, either on his own behalf or on behalf of any other person, shall have any financial or personal interest in any business or transaction with the City of Lincoln, unless he shall first make full public disclosure of the nature and extent of such interest. Disclosure and disqualification. Whenever the performance of his official duties shall require any official or employee to deliberate and vote on any matter involving his financial or personal interest,

he shall publicly disclose the existence of such interest and disqualify himself from participating in the deliberations as well as in the voting. * * *." We note, in passing, that certain deletions and changes were made in the above ordinances in 1978, but consideration is given in this opinion only to such ordinances as were in effect at times material to this litigation, and which were introduced into evidence at the trial.

We must first determine whether Cook violated the provisions of the Lincoln Municipal Code prohibiting conflicts of interest. Cook testified at trial that he made an oral declaration of a conflict of interest at a city council meeting shortly after acquiring an interest in the property in February of 1976. On July 30, 1976, the day the rezoning petition for Cook's property was filed with the city council, Cook held a news conference and declared his conflict of interest due to his partial ownership in the property. On September 10, 1976, at a special meeting of the planning commission, consultants, city council, and county board, Cook declared a conflict of interest when a motion was made to indicate to the consultants the size of the projected shopping centers. Again, at a city council meeting on October 18, 1976, Cook filed and read a written statement into the record of his conflict of interest. The city council then voted to accept Cook's statement of conflict of interest. Also, at the October 25, 1976, city council meeting Cook declared a conflict of interest and did not participate when his and the plaintiff's petitions were placed on "pending," to be held in abeyance until a comprehensive plan was adopted. Cook again declared a conflict of interest at the November 15, 1977, city council meeting when plaintiff's petition for rezoning was also placed on pending. Thereafter, at a special meeting of the planning commission, city council, county board, and the consultant on December 7, 1976, Cook declared a con-

flict of interest and abstained from voting in regard to shopping centers. Again, at the December 9, 1976, special meeting of the planning commission, city council, and county board, Cook abstained from voting on the status of Old Cheney Road, declared a conflict of interest on the issue of the locations for shopping centers, abstained from voting, because of a conflict of interest, on the issue of the development of Pine Lake Road and further disqualified himself from voting on the recommendation of the planning commission staff to increase the residential density development in south Lincoln due to a conflict of interest. Also, on January 24, 1977, Cook filed an affidavit with the city clerk declaring his conflict of interest on the issue of the regional multiuse shopping centers in the comprehensive plan. At the January 25, 1977, city council meeting, during discussion of the proposed comprehensive plan, city councilman Robinson moved that the plan be amended to substitute Copple's property for Cook's property as the designated site for the south regional multiuse shopping center. Cook declared a conflict of interest and left the podium to sit in the audience during the discussion and vote on Robinson's motion.

The plaintiff nevertheless argues that Cook participated in the development of the transportation system, the utilities, and the residential densities included in the plan, all of which affect the viability of a shopping center located on his property. Cook testified, however, that he did not participate in the deliberations or vote on these matters if they specifically dealt with his property. We are unable to find evidence in the minutes of the meetings in the record which shows that Cook participated in these matters when they dealt with the area encompassed by the proposed south shopping center.

At the January 25, 1977, city council meeting, planning director Brogden submitted amendments to correct the residential densities in nine different

areas of Lincoln in the proposed comprehensive plan. One of these corrections increased the density of dwellings around Cook's property from 6 to 10 units per acre, to 11 to 14 units per acre. Cook voted in favor of this amendment which also corrected eight other areas in Lincoln.

We have found no evidence in the record which indicates that Cook participated in the discussion of whether or not Pine Lake Road should be constructed between 56th Street and 14th Street in Lincoln, although at one meeting he did argue for the inclusion of a Northeast Radial in the plan to provide better access to the fairgrounds.

At the December 9, 1976, special meeting of the planning commission and others, Cook abstained from voting. The planning director stated the consultants pushed for Pine Lake Road to divert traffic from Old Cheney Road, as it divided south Lincoln, and that, "this was part of the decision to accept the shopping center at the location shown in the Plan," the location shown in the plan being Cook's property. The consultants also indicated the decision to have Pine Lake Road as a four lane facility was to reduce traffic on Old Cheney Road, not to accommodate a shopping center. An opinion was expressed at this meeting "that Pine Lake Road would logically become a major traffic carrier to the south, regardless of the actions today, and that by making the designation today, sufficient right-of-way could be provided for future use."

Plaintiff states in his brief that Cook "lobbied Mr. Nims, a Planning Commissioner, to adopt the more extensive [transportation] plan prior to the Planning Commission meeting" on July 26, 1976. A review of Nims' testimony does not sustain plaintiff's contention that any such lobbying occurred. Plaintiff also states in his brief that at the July 26, 1976, meeting of the City-County Common "Mr. Cook deliberated upon and *voted in favor* of a Council resolution on the

transportation element which resolution was clearly designed to influence the Planning Commission * * *.'' (Emphasis supplied.) The minutes of the meeting in evidence show that Cook voted *against* the resolution, though the resolution carried. It is true, the record reflects, that Cook participated in the development of the transportation system, utilities, and residential densities in the preparation of the plan; but the trial court as the trier of the facts, after hearing all the evidence, found that Cook's participation was minimal. A review of the record convinces us the trial court was correct in this finding, and we believe the record sustains the conclusion that there was a good faith effort on the part of Cook to comply with the Lincoln ordinances relative to disclosing a conflict of interest, and that he did substantially comply with them.

It is uncontroverted that Cook did vote at the January 25, 1977, city council meeting to adopt the proposed comprehensive plan. However, in Van Itallie v. Borough of Franklin Lakes, 28 N. J. 258, 146 A. 2d 111 (1958), the court held that a public official should not be disqualified from voting on a zoning ordinance if he had a remote, contingent, and speculative conflicting interest. The court also stated that: ''The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case.''

We believe that Cook's interest in the development of his property is remote and speculative due to the land-use devices involved, including utility controls, subdivision controls, control of public highways, and the future staging of development and zoning.

As we stated in Stones v. Plattsmouth Airport Authority, 193 Neb. 552, 228 N. W. 2d 129 (1975): ''A comprehensive development plan is merely a policy statement that may be implemented by a zoning resolution. * * * *It is the zoning resolution which has*

*the force of law.* \* \* \* A comprehensive plan is a guide to community development rather than an instrument of land-use control." (Emphasis supplied.) See, also, Holmgren v. City of Lincoln, 199 Neb. 178, 256 N. W. 2d 686 (1977); Iverson v. Zoning Board of Howard County, 22 Md. App. 265, 322 A. 2d 569 (1974).

We agree that Cook's participation was minimal and that his interest was not an immediate and direct pecuniary interest. Under these facts and circumstances we find that Cook's conflict of interest, if any, was not sufficient to disqualify his vote to adopt the comprehensive plan at the January 25, 1977, city council meeting.

We also point out, in passing, that both Copple's and Cook's applications for rezoning their respective properties are still pending, awaiting future action by the city council, which body need not necessarily follow the comprehensive plan, and which may possibly decide, after a hearing and further consideration of the matter, to establish a south shopping center at a different location.

For the reasons set forth above the judgment of the District Court is hereby affirmed.

AFFIRMED.

BRODKEY, J., concurring.

The majority opinion in this case represents only a part of the opinion as originally drafted. Obviously, I concur in the part of the original opinion that has been adopted by the majority of the court as the opinion in this case. However, I believe that much more must be said with reference to certain aspects of the case not now referred to in the opinion.

The Lincoln city council, at its January 25, 1977, meeting voted *unanimously* to adopt the proposed comprehensive plan. Even if we were to assume, arguendo, that Cook's vote was disqualified because of a conflict of interest, I do not believe it would necessitate a reversal of this case. We would, how-

ever, be faced with a question of first impression in this state, which is whether a disqualifying vote will void the city council's proceedings where that vote is not necessary to pass on the issue. On this point there is a division of authority.

New York, New Jersey, and Iowa have all held that the vote of a municipal officer, who is disqualified to vote because of a conflict in interest, renders the proceedings void or voidable, although his vote was not necessary to pass the issue. Baker v. Marley, 8 N. Y. 2d 365, 208 N. Y. S. 2d 449, 170 N. E. 2d 900 (1960); Aldom v. Borough of Roseland, 42 N. J. Super. 495, 127 A. 2d 190 (1956); Wilson v. Iowa City, 165 N. W. 2d 813 (Iowa, 1969).

The rationale of this rule is enunciated in the case of Piggott v. Borough of Hopewell, 22 N. J. Super. 106, 91 A. 2d 667 (1952), where the court stated: "[T]he concurrence of an interested member in the action taken by the body taints it with illegality. * * * The infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable. * * * This is the general rule. * * * It is supported by a twofold reason, viz.: First, the participation of the disqualified member in the discussion may have influenced the opinion of the other members; and, secondly, such participation may cast suspicion on the impartiality of the decision. * * * It being impossible to determine whether the virus of self-interest affected the result, it must needs be assumed that it dominated the body's deliberations, and that the judgment was its product."

The states which have held that the vote of a disqualified municipal officer does not vitiate the proceedings where his vote was unnecessary to pass the issue have rejected this argument on the basis that the "illegal" vote does not affect the "legal" votes, particularly when there are multiple votes, only one of which is illegal. Singewald v. Minneapolis Gas Company, 274 Minn. 556, 142 N. W. 2d 739 (1966);

Eways v. Reading Parking Authority, 385 Pa. 592, 124 A. 2d 92 (1956); Marshall v. Ellwood City Borough, 180 Pa. 348, 41 A. 994 (1899).

The most recent case to which my attention has been directed is Anderson v. City of Parsons, 209 Kan. 337, 496 P. 2d 1333 (1972). In that case the Supreme Court of Kansas held that two city officials who owned property within an urban renewal area, but not within the specific project, and who voted for the project, did not invalidate the majority vote where their interest was general or of a minor character. See, also, Beale v. City of Santa Barbara, 32 Cal. App. 235, 162 P. 657 (1917); Corliss v. Village of Highland Park, 132 Mich. 152, 93 N. W. 254 (1903), affm'd on rehearing, 132 Mich. 152, 95 N. W. 416 (1903).

I believe the above line of cases represents the better authority and that the rule should be that where a required majority exists without the vote of a disqualified council member, his presence and vote will not invalidate the result.

In the instant case, there were six other city council members, all of whom voted to adopt the proposed comprehensive plan submitted to them by the planning commission at the January 25, 1977, city council meeting. The other six members were all fully apprised of Cook's interest in the designation of his property as a regional shopping center in the comprehensive plan. It appears that Cook on many occasions attempted to, and did, make his interest fully known to the other city council members.

It is clear that since the inception of the plan, about the year 1970, an enormous amount of time, energy, careful thought, and taxpayer funds were put into the development of the comprehensive plan before it was submitted to the city council for adoption. The designation in the comprehensive plan of Cook's property for a proposed regional shopping center site was just one element in the total compre-

hensive plan for the development of Lincoln and Lancaster County to the year 2000. At the January 25, 1977, council meeting, Cook abstained from voting or participating in the discussion on councilman Robinson's motion to substitute plaintiff's property for Cook's property in the plan as the site for a regional shopping center. I believe that even if Cook's vote were to be considered invalid because of a conflict of interest, the plan, as adopted, should not be adjudged invalid nor voided. To do so would needlessly deprive the citizens of the City of Lincoln and Lancaster County of the undoubted benefits of the comprehensive plan brought to fruition after years of labor on the part of their public officials, and experts employed by them. This would be a needless and unwarranted waste of resources, and would result in further delay and expense, were we to hold that a disqualified vote invalidates the entire comprehensive plan. This, I submit, should not be done in this or any similar situations arising in the future.